MARY W. LYNDE, Respondent and Appellant, v. CHARLES W. LYNDE, Appellant and Respondent.

1. FINAL DECREE FOR ALIMONY IN ANOTHER STATE AGAINST A RESIDENT OF THIS STATE — JURISDICTION ACQUIRED BY GENERAL APPEARANCE. A court of another state which, by the law of that state, has power to amend a decree of divorce previously rendered therein against a resident of this state, by the insertion of provisions for alimony alleged to have been inadvertently omitted therefrom, acquires jurisdiction to render a final decree for the payment of alimony, against him, upon a motion for such amendment, where he was personally served in this state with notice thereof, and he made a general appearance and contested it,

although the decree of divorce was invalid as to him because rendered without jurisdiction.

2. CONSTITUTIONAL LAW — ENFORCEMENT OF FOREIGN DECREE. In an action here upon such a decree, the provision of the Federal Constitution that full faith and credit shall be given in each state to the judicial proceedings of every other state (U. S. Const. art. 4, § 1), requires the courts of this state to give it full credit and effect as a judicial debt of record against the defendant for the amount fixed at the time of its rendition, but the law of this state does not permit the plaintiff, in aid of a judgment recovered upon the decree, to invoke the equitable remedies provided by the Code of Civil Procedure for the enforcement of a decree for alimony, inasmuch as they are available only in aid of decrees of divorce rendered in this state.

3. PROVISION FOR THE PAYMENT OF FUTURE ALIMONY. A provision in such foreign decree for the payment of alimony in the future, however, remaining subject to the discretion of the foreign court, lacks that conclusiveness which requires the courts of this state to enforce it, inasmuch as the provision of the Federal Constitution referred to should be deemed to relate to judgments or decrees which not only are conclusive in the jurisdiction where rendered, but which are final in their nature.

4. EQUITABLE REMEDIES NOT ENFORCEABLE IN THIS STATE. Provisions in such decree for methods to enforce payment, and a subsequent order which sought to carry it into effect by the equitable remedies of a receivership and injunction, cannot be enforced in this state, because they are in the nature of execution and operative upon the defendant only as he or property belonging to him may be found within the jurisdiction of the foreign court.

*Lynde* v. *Lynde*, 41 App. Div. 280, affirmed.

(Argued February 14, 1900; decided April 6, 1900.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 16, 1899, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought upon a final decree of the Court of Chancery of the state of New Jersey; which, as the result of proceedings to recover alimony, adjudged that the plaintiff is entitled to recover of the defendant the sum of $7,840, and a counsel fee of $1,000; that the defendant pay to her permanent alimony at the rate of $80.00 a week from the date of the decree and that he give security for the payment of the

several sums directed by the decree to be paid and, further, provided, upon his failure to comply with the decree, that application might be made for sequestration proceedings, for a receivership and for an injunction. The complaint, also, asked to have enforced an order, made subsequently to the final decree, which appointed a receiver and enjoined the defendant from disposing of his property, etc.

The plaintiff and the defendant were married in the state of New Jersey in 1884, and were domiciled there. In 1892 the plaintiff filed her petition in chancery in that state, which alleged, among other things, desertion by her husband and cruel treatment, and prayed that she might be divorced from him and that reasonable alimony might be decreed to be paid to her. The defendant was not served personally, but by publication of process, and did not appear in the action nor answer the petition. Thereafter such proceedings were had in the case that, in 1893, a final decree was made, divorcing the petitioner from the defendant upon the ground of his willful and continued desertion, but containing no provision with respect to alimony. In 1896, the plaintiff filed a petition, upon affidavits, for the amendment of the decree of divorce, so as to provide for an award of alimony. The grounds of the application were that, though her petition in the divorce proceedings prayed for alimony, through the inadvertence, or neglect of her solicitor, the decree was entered without making provision adjudging the payment of alimony, or reserving the consideration thereof for hearing upon a future application. An order was granted by the chancellor, directing the defendant to show cause why the petition should not be granted; which, with the moving papers, was personally served upon the defendant in this state. The defendant appeared in opposition to the application, by J. Herbert Potts, as his solicitor, and without any reservation upon the record as to the appearance. He filed an affidavit, in which he alleged that his residence was in the state of New York; that he "was by the decree of this court divorced from the said petitioner from the bond of matrimony, upon her peti-

tion, on August 7th, 1893, and that since that time he has been married again to another woman, with whom he is now living," etc.; that "the decree for divorce was purposely drawn without providing for, or reserving any alimony," etc.; that he was "financially unable to pay alimony" and "that he is advised by counsel and believes that the said decree having been made without reserving the question of alimony, and this defendant having been absolutely divorced from the said petitioner by said decree, and having since formed new relations and matrimonial obligations, that it would be illegal, inequitable and unjust to now impose upon him the burden of alimony, so long after the granting of said absolute decree dissolving his first matrimonial relations absolutely without terms."

After testimony had been taken, pursuant to an order of the chancellor, during the course of which Mr. Potts appeared as defendant's solicitor, and after argument upon the same by the solicitor for the petitioner and the solicitor for the defendant, the chancellor ordered that the decree of divorce theretofore made should be amended by inserting therein that "it is further ordered, adjudged and decreed that the petitioner, Mary W. Lynde, shall have the right to apply to this court at any time hereafter, at the foot of this decree, for reasonable alimony and such other relief in the premises touching alimony as may be equitable and just, and this court reserves the power to make such order or decree as may be necessary to allow and compel the payment of alimony to petitioner by defendant, or to refuse to allow alimony." It appears in the opinion of the chancellor, which is made a part of the record, (54 N. J. Eq. 473), that he was satisfied that the omission of the decree to reserve the question as to alimony was due to the inadvertence of the petitioner's counsel and that, under the rule recognized by the court, it will "amend its enrolled decree when the amendment is necessary to give full expression to its judgment." From the order amending the decree of divorce, the defendant appealed to the Court of Errors and Appeals; where the order was affirmed. Thereupon, after reciting the various

proceedings relating to the amendment of the decree of divorce, an order of reference was made as to whether alimony should be allowed to the petitioner and, if so, how much. This order was entered after service of a notice upon the defendant's solicitor and the reference was proceeded with after personal service upon the defendant of a summons to attend. Neither the defendant, nor his solicitor, appeared upon the reference, although duly notified, and such proceedings were had that the final decree herein sued upon was made, on December 28th, 1897, by the chancellor; which, after reciting the proceedings had and the report of the master to whom it had been referred to report as to alimony, and "adjudging that a money judgment should be rendered against the defendant," adjudged and decreed as first hereinabove briefly described. Thereafter, upon proof of the failure of the defendant to comply with the final decree, an order dated February 8th, 1898, [referred to in the complaint as of "24th day of March, 1898"] was made, appointing a receiver of the defendant's property in New Jersey and directing the issuance of an injunction, etc. The receiver was unable to obtain possession of any of the defendant's property in New Jersey and the defendant did not comply with the decree in any respect.

The trial court decided that the plaintiff was entitled to a judgment against the defendant, enforcing against him the decree of the chancery court of New Jersey and further enforcing against him the order of that court which provided for the enforcement of the decree by the appointment of a receiver and by an injunction. She was held entitled to judgment against the defendant for the amount of alimony, counsel fee and costs due, or incurred, under the New Jersey decree; for the amount of alimony accrued since the decree; that he pay to her the sum of $80.00 a week from the date of the decision, as and for permanent alimony; that he give a bond in the sum of $100,000, to secure the payment of the several sums of money specified and that, upon his failure to comply with the provisions of the decision, a receiver might be appointed, ancillary to the receiver appointed by the Court

of Chancery of New Jersey. Exceptions were filed to the decision and, thereafter, judgment was entered in conformity with the decision. The Appellate Division, upon the defendant's appeal, modified the judgment, so as to adjudge that the plaintiff recover of the defendant the sum of $8,840, and, as so modified, affirmed it. The amount of the recovery, as allowed by the Appellate Division, represents the only, and the precise, amount of money, which the final decree of the court in New Jersey adjudged to be due and payable from the defendant to the plaintiff, at the date of its rendition. Cross-appeals were taken by the parties from the judgment of the Appellate Division; the plaintiff because of its modification, and the defendant because of its affirmance, of the judgment of the trial court.

*John H. Kemble* and *George S. Ingraham* for defendant, appellant and respondent. The original decree of divorce was and is void as against the defendant for want of jurisdiction. (*People* v. *Baker,* 76 N. Y. 78; *O'Dea* v. *O'Dea,* 101 N. Y. 23; *Atherton* v. *Atherton,* 155 N. Y. 129; *Matter of Kimball,* 155 N. Y. 62; Jacobs on Domicile, § 47; *Potter* v. *Ogden,* 136 N. Y. 384; *Kilburn* v. *Woodworth,* 5 Johns. 37; *Harlaness* v. *Hyde,* 98 U. S. 476; *Owens* v. *Henry,* 161 U. S. 642; *H. M. & M. Co.* v. *Johnson,* 173 U. S. 221.) The void decree for divorce will not support a judgment *in personam* awarding alimony. (*Beard* v. *Beard,* 21 Ind. 321; *Lytle* v. *Lytle,* 48 Ind. 200; *Middleworth* v. *McDowell,* 49 Ind. 386; *Prosser* v. *Warner,* 47 Vt. 667; *Harding* v. *Alden,* 9 Me. 140; *Garner* v. *Garner,* 56 Ind. 127; *Van Storch* v. *Griffin,* 71 Penn. St. 240; *People* v. *Baker,* 76 N. Y. 78; *Van Voorhis* v. *Brintnall,* 86 N. Y. 18; *de Meli* v. *de Meli,* 120 N. Y. 485.) An appearance only in a supplemental proceeding will not render an otherwise void judgment of another state valid. (*Ward* v. *Boyce,* 152 N. Y. 191; *Stuart* v. *Palmer,* 74 N. Y. 183; *Davidson* v. *Board Ad., etc.,* 96 U. S. 97.) The defendant's subsequent marriage could not validate the decree. (*Rigney* v. *Rigney,* 127 N. Y. 408.)

*James Westervelt, Henry B. Gayley* and *Matthew C. Fleming* for plaintiff, respondent and appellant. The facts admitted by the pleadings show that the New Jersey Court of Chancery had unquestionable jurisdiction to award alimony to the plaintiff against the defendant, and to make the decree and order which it did make. (*Fleischmann* v. *Stern*, 90 N. Y. 110 ; *E. R. El. L. Co.* v. *Clark*, 18 N. Y. Supp. 463 ; *Beard* v. *Tilghman*, 66 Hun, 12 ; *Ritchie* v. *McMullen*, 159 U. S. 235 ; *Hoffheimer* v. *Stiefel*, 39 N. Y. Supp. 714 ; *Hill* v. *Mendenhall*, 21 Wall. 453 ; *Brown* v. *Balde*, 3 Lans. 283 ; *Aspinwall* v. *Aspinwall*, 53 N. J. Eq. 684 ; *Hunt* v. *Hunt*, 72 N. Y. 217 ; *Campbell* v. *Campbell*, 90 Hun, 233.) The proofs submitted at the trial show that the decree and order sued on were duly made and entered and are binding on the defendant personally in the state of New Jersey. (*Lynde* v. *Lynde*, 54 N. J. Eq. 473 ; 55 N. J. Eq. 591 ; *Crane* v. *Brigham*, 3 Stock. Ch. 29 ; *Rigney* v. *Rigney*, 53 Hun, 457 ; 127 N. Y. 408 ; *Laing* v. *Rigney*, 160 U. S. 531 ; *Crowell* v. *Bottsford*, 1 C. E. Green, 458 ; *Forrest* v. *Forrest*, 25 N. Y. 501 ; *Galusha* v. *Galusha*, 138 N. Y. 272 ; *Hauscheld* v. *Hauscheld*, 33 App. Div. 296 ; *Ostrander* v. *Weber*, 114 N. Y. 95 ; *Taylor* v. *Taylor*, 43 N. Y. 578.) The Constitution of the United States requires that full faith and credit be given to the decree and order of the New Jersey court. As that court had jurisdiction of the parties and of the subject-matter of the suit, the courts of this state are bound to give to that decree the same binding force and effect here that it has in New Jersey. (U. S. Const. art. 4 ; U. S. R. S. § 905 ; *Dobson* v. *Pearce*, 12 N. Y. 156 ; *Fletcher* v. *Ferrell*, 9 Dana, 372 ; *Cheever* v. *Wilson*, 9 Wall. 108 ; *Barber* v. *Barber*, 21 How. [U. S.] 582 ; *Shields* v. *Thomas*, 18 How. [U. S.] 253 ; *Nations* v. *Johnson*, 24 How. [U. S.] 195 ; *Youngs* v. *Carter*, 10 Hun, 194 ; *Sherman* v. *Felt*, 2 N. Y. 186.) The Appellate Division erred in modifying the judgment of the Special Term. (*Knapp* v. *Knapp*, 59 Fed. Rep. 641 ; *Brisbane* v. *Dobson*, 50 Mo. App. 170 ; *Bullock* v. *Bullock*, 57 N. J. L. 508 ; *Lynch* v. *M. E. Ry. Co.*, 129 N. Y. 280 ; *Van Allen* v. *N. Y. E. R. Co.*, 144 N.

Y. 174; *Inderlied* v. *Whaley*, 85 Hun, 63; *Kilbourne* v. *Bd.. of Suprs.*, 137 N. Y. 170; *Pennington* v. *Gibson*, 16 How. [U. S.] 65; *Thompson* v. *Thompson*, 52 Hun, 456; *Wetmore* v. *Wetmore*, 149 N. Y. 520.)

GRAY, J.  I think that the Appellate Division has very correctly decided the questions in the case and the opinion of Mr. Justice BARTLETT, speaking for that court, leaves little,. if anything, to be added to its reasoning.  With respect to the main question, whether the Court of Chancery of the state of New Jersey acquired jurisdiction over the defendant to render the final decree for the payment of alimony, it is. argued, in his behalf, that the decree of divorce was invalid . as to him and, therefore, afforded no support for the decree of alimony.  That the decree of divorce was of no force as to him cannot be disputed.  It is quite settled, at the present day, that no state can exercise jurisdiction and authority over persons, or property, without its territory.  Its laws and the. judgments of its tribunals can have no extra-territorial operation; except so far as the former may be allowed such by comity.  The decree of divorce, which the plaintiff obtained in New Jersey, was effectual to determine her status as a citizen of that state towards the defendant; but as to him it. effected nothing and was void for want of personal service of process, or of an appearance by him in the divorce proceedings.  One, or the other, of these conditions was required to be shown to enable the court to proceed with jurisdiction *in personam*.  As the service of process was constructive, by publication, however authorized by the laws of the state, it was ineffectual against the defendant for any purpose.  (*People* v. *Baker*, 76 N. Y. 78; *Matter of Kimball*, 155 ib. 62 ;. *Pennoyer* v. *Neff*, 95 U. S. 714; Story's Conflict of Laws, sec. 539.)

This action, however, is upon a final decree of the chancery court of New Jersey, which rendered a money judgment *in personam* against the defendant in a proceeding in which there was a voluntary appearance on his part.  Upon service

of the order of the chancellor, directing him to show cause why the petition of the plaintiff for the amendment of the decree of divorce should not be granted, he appeared in the proceeding, without any reservation of record, and without making any objection to the jurisdiction of the court. Not only was that so, but in his affidavit, which was filed in the proceeding, he asserted that he had been divorced from his matrimonial relations upon the plaintiff's petition; that he had subsequently married again and his objections to the granting of the plaintiff's petition were carefully formulated. He alleged that "the decree for divorce * * * was purposely drawn without providing for, or reserving any alimony," etc.; that he was "financially unable to pay alimony," and "that the said decree of divorce having been made without reserving the question of alimony, and this defendant having been absolutely divorced from said petitioner by said decree, and having since formed new relations and matrimonial obligations, that it would be illegal, inequitable and unjust to now impose upon him the burden of alimony," etc. In short, he appeared and submitted himself to the jurisdiction of the court, appealing to its consideration of the facts and not objecting to its power to proceed; not repudiating the divorce, but relying upon it. There cannot be the slightest question that his appearance was general. He was represented by counsel, until the order of the chancellor, which amended the decree of divorce by reserving to the petitioner the right to apply at the foot thereof for alimony and to the court the power to make any further order with respect thereto, had been affirmed by the Court of Errors and Appeals, upon his own appeal, and until the application for a reference to determine the amount of alimony. Is he, then, in a position to invoke the invalidity of the original decree of divorce? As he was not personally served and did not appear in the divorce action, the decree divorcing the plaintiff could not have given her any judgment *in personam.* It did not reserve the right to apply thereafter for alimony, when jurisdiction *in personam* was

obtained of the defendant; but that was an unintentional omission, as the chancellor decided, which was due to the inadvertence of plaintiff's counsel and would be remedied by amending the decree. The affirmance of the order, in that respect, on defendant's appeal, settled the law of that state to be that the court may, upon petition, amend its enrolled decree, when the amendment is necessary to give full expression to its judgment and is matter which would, without doubt, have been incorporated in the decree when made, if attention had been called to it. (*Lynde* v. *Lynde*, 54 N. J. Eq. 473.) The demand for alimony in a divorce suit is not an essential part of the cause of action ; but is merely incidental to the action and the judgment. (*Forest* v. *Forest*, 25 N. Y. 501 ; *Galusha* v. *Galusha*, 138 ib. 272, 281 ; *Lynde* v. *Lynde, supra.*) In *Kamp* v. *Kamp* (59 N. Y. 212), the question was not up as to whether the court might amend its judgment granting divorce, simpliciter, when the omission to reserve the question of alimony was shown to have been through inadvertence. The application there was for an order directing the payment of alimony, upon a judgment of divorce which was silent as to alimony, and it was held that the power to allow it in subsequent proceedings does not exist, in view of the legal presumption that the judgment had finally decided every question involved in the action; which would include the right of the plaintiff to claim alimony.

In my opinion, assuming, as we must, that the decree of the chancery court, which amended the original decree of divorce, expressed the law of the state of New Jersey, (*Laing* v. *Rigney*, 160 U. S. at p. 542), jurisdiction was obtained over the defendant by his appearance, plea and submission, to so far cure the invalidity of the divorce decree as to render it effective as a basis for alimony proceedings. But whether its invalidity was cured, or not, in the subsequent proceeding to which the defendant was a party, a final decree was entered adjudging that he pay to the plaintiff a certain sum of money. The jurisdiction once obtained could not be divested by his refusal to appear in the later stages of the

proceeding. He cannot now attack the final decree of the court collaterally, after having had his day in court. In *Laing* v. *Rigney* (*supra*), after the wife had filed a bill against her husband in the Court of Chancery, in the state of New Jersey, alleging acts of adultery and the defendant had appeared and answered denying the allegations, the plaintiff filed a supplemental bill; wherein she alleged that the defendant had committed adultery with a person named, since the commencement of the suit, and prayed that she might have the same relief against the defendant as she might, if the facts had been stated in the original bill. Process upon the supplemental bill could not be served personally upon the defendant, who was a non-resident, and there was a substituted service by publication. He filed no answer to the supplemental bill, nor did he appear, and a final decree was rendered by the chancellor granting the divorce and awarding alimony, etc. An action was then brought in this state by the wife upon the decree, to recover against her husband the amount awarded for alimony and costs, and the question was whether the New Jersey court had jurisdiction to render the decree. In the Supreme Court of the United States, to which the case was taken from this court (127 N. Y. 408), by writ of error, it was held that, in affirming the dismissal of the plaintiff's complaint upon the trial, due effect had not been given to the provisions of article four of the Constitution of the United States, which require that full faith and credit shall be given in each state to the judicial proceedings of every other state. It was conceded that if the judgment of the Court of Chancery was not binding upon the defendant therein, personally, in that state, no such force could be given to it in the state of New York; but it was held that the law of the state of New Jersey must be deemed to be as declared by the chancellor, who had rendered a final decree, based upon the original bill, the process under which had been served upon the defendant within the state, and upon the supplemental bill, a copy of which, with the rule to plead, had been served upon the defendant without the state. It was said that "so long as

this decree stands, it must be deemed to express the law of the state. If the defendant deemed himself aggrieved thereby, his remedy was by appeal." In other words, the Supreme Court of the United States held that the New Jersey court having once acquired jurisdiction of the defendant in the action, whether it retained that jurisdiction, so as to render the final decree in the proceedings leading thereto, was a question depending upon the law of that state, which could not be attacked collaterally.

*Laing* v. *Rigney* is much in point; inasmuch as jurisdiction of the defendant, in this case, having been obtained in the proceeding, it was retained by the court until it made the final decree. The jurisdiction conferred the power to render the decree and it will be regarded as valid and binding until set aside in the court in which it was rendered. (*Kinnier* v. *Kinnier*, 45 N. Y. p. 542.)

*Ward* v. *Boyce*, (152 N. Y. 191), has no application. The action was upon a promissory note, made by the defendant to the plaintiff's order, and the issue between the parties was as to the plaintiff's ownership. The defendant claimed that the record of a certain proceeding in a Justice's Court, in the state of Vermont, was conclusive evidence that the note was not her property, but was that of her husband. The proceeding in the Vermont court was by way of trustee process and was instituted by a creditor of Mr. Ward, this plaintiff's husband, against him and Boyce, the maker of the note, as his debtor. Ward was a non-resident, did not appear and judgment went against him by default. Boyce, the other defendant, appeared and stated that he gave the note to Mrs. Ward for cattle purchased and he asked that she be cited to appear. A citation was served upon her, in the state of Vermont, to show cause why the note should not be adjudged to be held as her husband's property by his creditor. She did not appear and judgment was rendered in conformity with the terms of the citation. We held that the judgment did not conclude Mrs. Ward; because she was not a party to the proceeding and was cited to appear at a stage of it, when she had no oppor-

tunity to litigate the fundamental issue.    The principal fact
had then been adjudged, that the indebtedness for the cattle,
for which the note was given, was owing to the husband; and
this in a special statutory proceeding, in which the court had
acquired no jurisdiction by service of any process upon him,
or upon his wife, who held the note.    When she was cited, it
was not that she might contest the validity of the judgment
against her husband; but merely to show cause why the note
she held should not be adjudged as her husband's property
and to be held by his creditor.    I can perceive no resemblance
in the principle of the decision in *Ward* v. *Boyce* to that
involved here.

I am satisfied, without further discussion, that the Court of
Chancery in New Jersey had ample jurisdiction to render the
final decree, now in question, against the defendant.

With respect to how far the Supreme Court of this state
will enforce the final decree of the New Jersey court, I think
the determination of the Appellate Division to be quite cor-
rect.    The action was to recover upon a final decree of the
court of another state, which, being rendered with jurisdiction
over the person of the defendant, is to be deemed conclusive,
in so far as it adjudged the defendant to be indebted to the
plaintiff at the date of its rendition.    The proceeding in
chancery had terminated in an unconditional decree that the
defendant must pay a definite sum of money, established as a
debt against him, and, therefore, it had extra-territorial value
and force.    (Wharton Confl. Laws, § 804.)    As a debt of
record against the defendant the courts of this state should
give it full credit and effect; but as to its other provisions for
future alimony and for equitable remedies to enforce compli-
ance, I do not think we should say that it falls within the rule
of the Federal Constitution.    I do not think that the courts
of this state should give effect to the decree by enforcing any
of the collateral remedies, which the prevailing party may be
entitled to in New Jersey and which the subsequent order gave
to her.

So far as it made provision for the payment of alimony in
                53

the future, it remained subject to the discretion of the chancellor and lacked conclusiveness of character. The chancellor's action was not final on the subject. As he observed in *Lynde* v. *Lynde* (*supra*), referring to the law of New Jersey: " The statute exhibits an intention that the subject shall be continuously dealt with according to the varying condition and circumstances of the party." The provision of the Federal Constitution, which requires that full faith and credit shall be given to the judicial proceedings of another state, in my opinion, should be deemed to relate to judgments, or decrees, which not only are conclusive in the jurisdiction where rendered, but which are final in their nature. If they, once and for all, establish a debt, or other obligation, against a party, the record is available in other jurisdictions as a foundation for a judgment there.

The provisions of our Code for the enforcement of a direction, in a judgment of divorce, for the payment of alimony, by equitable remedies, pertain only to such judgments as are recovered here. (Art. IV, chap. 15.) The jurisdiction of the Supreme Court of this state to dissolve a marriage is conferred solely by statute and its provisions upon the subject of alimony are not available to the plaintiff in aid of her decree.

The plaintiff's decree was, therefore, available to her as evidence in this action that the subject-matter of the proceedings leading to its rendition, viz.: the liability for alimony, had become a debt of record in the state of New Jersey, which could not be avoided but by plea of *nul tiel* record. (*M'Elmoyle* v. *Cohen*, 13 Peters [U. S.], 312, 324.)

The case of *Barber* v. *Barber* (21 How. [U. S.] 582), cited by the plaintiff in support of her claim that the decree of the New Jersey court should be enforced in all its parts, was not parallel in its facts and the observations of Justice Wayne, which are referred to, if intended as supposed, were not necessary to the decision of the particular question. In that case the wife had obtained a judgment of divorce from her husband in the Court of Chancery of this state and the final

decree awarded her a sum of money representing alimony retrospectively due to her, for the interval between the filing of the bill and the rendition of the decree; directed execution therefor and, further, ordered the payment of permanent alimony in the future, *during her life*, in quarterly payments, which was "vested in her for her own and separate use and as her own and separate estate, with full power to invest the same    *    *    *    to dispose of the same by will, or otherwise, from time to time during her life, or at her death," etc. The husband then left this state and went to Wisconsin. A bill was filed there, in the United States court, by the wife, through her next friend, setting forth the proceedings had in the New York court and the decree; charging the husband with not having paid any part of the alimony adjudged to his wife and alleging that there was then due to her a certain amount of money on that account. In his answer, he admitted the rendering of a decree of divorce after contestation and that by it he "was subjected to the payment of alimony to the extent and in the way it is claimed in the bill," and alleged that, as he had obtained a divorce from his wife in Wisconsin, she thereby, "became a *feme sole* and being so, could not sue by her next friend," etc. The action resulted in a decree, adjudging that a stated amount of money "is due from the defendant upon the alimony sued for" and, upon his default in payment, ordering execution therefor. It will be observed that the situation of the parties was quite other than it is here; that the decree of the New York court was the basis of a bill in equity in the Federal court and that its finality as an adjudication with respect to alimony, past due and in the future — (in which latter respect it was made a vested estate in her for life) — was admitted by the answer to the bill. It will also be observed that the decree obtained in the United States court, in Wisconsin, merely adjudged a certain amount to be due complainant which the defendant must pay. The question in the case was stated to be, whether the wife might sue in another state "by her next friend, in equity, in a court of the United States, to carry into judgment the decree" and much of the

discussion proceeded upon the jurisdiction in equity. As to the nature of a decree which awards alimony, it was remarked, in the course of the opinion, that when the court, having jurisdiction of the wife's suit for divorce, allows her alimony, " it becomes a judicial debt of record against the husband." As Mr. Justice BARTLETT very correctly suggests, in his examination of *Barber* v. *Barber,* Mr. Justice WAYNE, when he further observed in his opinion that the wife might sue her husband in another jurisdiction, " to carry the decree into a judgment there with the same effect that it had in the state in which the decree was given," could not have intended that she could carry with her judgment into another state the right to any particular remedies for its enforcement ; because that would have been in conflict with the rule which he had laid down many years earlier in *M'Elmoyle* v. *Cohen* (*supra*).

So far, therefore, as the final decree of the court in New Jersey adjudged moneys to be due and payable to the plaintiff from the defendant, it became a judicial debt of record, which the former was entitled to have enforced by the courts of this state, under the provisions of the Federal Constitution, and a judgment recovered thereupon could be executed only as our laws permit, (*Barber* v. *Barber, supra,* at p. 324) ; which would not include the particular equitable remedies, provided by the statute in the chapter on matrimonial actions. So far as the plaintiff's decree provided for methods to enforce payment, its provisions were in the nature of execution and operative upon the defendant only as he, or property belonging to him, might be found within the jurisdiction of the courts of New Jersey.

The subsequent order, dated February 8th, 1898, and which is set out in the complaint, (but referred to as of March 24th, 1898), is not enforceable here ; for it was merely an order which sought to carry the final decree into execution within the state by the equitable remedies of a receivership and of an injunction. No action will lie upon such an order. (*Sheehy* v. *P. Life Assur. Co.,* 2 C. B. [N. S.], at p. 256.)

I advise an affirmance of the judgment, without costs.

LANDON, J. I concur in the opinion of GRAY, J., in overruling the defendant's appeal. I would go further and sustain the plaintiff's appeal. The plaintiff seeks such equitable judgment in this state as shall give full faith, credit and effect to a decree of the Court of Chancery of New Jersey awarding her alimony against her husband. The case embraces a Federal question, and the decisions of the United States Supreme Court become authoritative so far as they are applicable. The question is not whether the jurisdiction of the courts of this state to grant alimony is equitable or statutory, but whether a plaintiff who has obtained a decree for alimony in another state can in an equitable action in this state, upon sufficient allegations and proofs, not only obtain judgment upon such foreign decree, but also such means of enforcing it as are suited to periodical payments, and the peculiar duty incumbent upon the husband in respect of alimony, which means equity alone can give. *Barber* v. *Barber* (21 How. [U. S.] 582) holds that equity has jurisdiction in such a case. In *Wood* v. *Wood* (7 Misc. Rep. 579) the court refused to follow the decision, and the Appellate Division has adopted the refusal. But the case there was upon a French decree, and no Federal question existed, and the court was not bound by the authority of the *Barber* case. It is otherwise here. If equity has jurisdiction, then it can adapt its remedies to the exigencies of the case. This the Special Term did, and I think did right.

PARKER, Ch. J., HAIGHT and WERNER, JJ., concur; LANDON, J., concurs in memorandum; O'BRIEN, J., not voting; CULLEN, J., not sitting.

Judgment affirmed.