ELVIRA THEKLA BOISSEVAIN, Respondent, *v.* DANIEL GIDEON BOISSEVAIN, Appellant.*

First Department, December 7, 1928.

* Revg. 130 Misc. 161.

*Ralph Stout,* for the appellant.

*Charles J. Nehrbas* of counsel [*Moses, Nehrbas & Tyler,* attorneys], for the respondent.

O'MALLEY, J. The amended complaint attacked sets forth the marriage of the parties in New York city on April 4, 1901, and the commencement in October, 1923, of an action by the plaintiff for an absolute divorce in the District Court of Amsterdam, Holland. Such action was based upon the defendant's adultery and was instituted by personal service while the defendant was domiciled in Amsterdam. He made personal appearance by attorney.

It is further alleged that on November 9, 1923, judgment was duly rendered in the Amsterdam action upon the ground of defendant's adultery, which dissolved the marriage between the parties and directed the defendant to pay alimony at the rate of £500 per annum in equal quarterly installments; that on or about April 27, 1926, the plaintiff commenced an action (in what court does not appear) against the defendant to recover alimony payable under said foreign judgment up to and including February 14, 1926, and that in said action judgment was rendered in favor of the plaintiff in the sum of $5,765.49 of which sum no part save $400 has been paid; that none of the amounts due under the judgment of the Amsterdam court subsequent to February 14, 1926, has been paid.

Twofold relief is demanded (1) for the amounts required to be paid by the defendant under the judgment of the court of Amsterdam between February 14, 1926, " and the date of the entry of judgment

in this action;" and (2) that the defendant be directed to make future payments to the plaintiff " in accordance with said judgment of said District Court of Amsterdam, Holland, and that said judgment be enforced in the same manner as a judgment for the payment of alimony rendered by Courts of this State."

While the prayer for relief is no part of the cause of action sought to be stated, it still may be determinative of the nature of the action. The second part of the prayer is clearly equitable. The first part, likewise, sounds in equity. It asks judgment, not for any specific sum, but for the amount due up to the time of the rendition of the judgment in this action. In an action at law, recovery may be had only for the specific amount due at the time of the commencement of the action.

The first question is whether this court should give recognition to the judgment of the District Court of Amsterdam. Whatever further facts may be adduced by subsequent pleadings or established on a trial of the issues, there is nothing in the complaint to cause this court to refuse recognition to the Holland judgment. Nothing is so far disclosed that would lead to the conclusion that the operation of the foreign decree of divorce would contravene the policy, or wrong or injure citizens, of this State. Upon the face of the complaint, therefore, the Holland decree is entitled to recognition. (*Hubbard* v. *Hubbard*, 228 N. Y. 81, 85; *Gould* v. *Gould*, 235 id. 14.)

The second question is whether the Holland judgment should be enforced by equitable relief from this court. This involves the construction of sections 1171 and 1172 of the Civil Practice Act. The answer depends upon whether the words " or a judgment rendered in another State for divorce upon the ground of adultery," as found in section 1171 of the Civil Practice Act, or the words " for the enforcement in this State of a judgment for divorce or separation rendered in another State," as found in section 1172, pertain not only to judgments rendered under the laws of the United States, but also to those of foreign alien States.

Prior to the enactment of chapter 318 of the Laws of 1904, it was held that, although the Federal Constitution requires the courts of this State to recognize the validity of such a decree, a judgment of divorce granted by a sister State of the Union was not entitled to enforcement through our courts of equity. (*Lynde* v. *Lynde*, 162 N. Y. 405; affd., 181 U. S. 183.) The words quoted from sections 1171 and 1172 (*supra*) were enacted to remedy the condition presented in the case last cited. (*Moore* v. *Moore*, 143 App. Div. 428; affd., 208 N. Y. 97; *Tiedemann* v. *Tiedemann*, 172 App. Div. 819, 825.)

To determine the meaning of the language in question we must

look to the old law, the mischief and the remedy. (*Woollcott* v. *Shubert*, 217 N. Y. 212, 221.) The mischief of the old law was that judgments of sister States of the Union, while accorded mandatory recognition under the Federal Constitution, were not enforcible by our equitable remedies, even though founded on facts fully commensurate with the public policy and statutory requirements of this jurisdiction. This situation was relieved and a desirable uniformity attained, by providing that such judgments of sister States of the Union would be given the benefit of our remedies.

Had the Legislature intended the words " another State " to have the broad generic meaning contended for by the plaintiff, it surely would have used words of more apt expression, as it did in many other sections of the Civil Practice Act. The very title of chapter 318, Laws of 1904, places in distinct apposition the words " this State " and " another State." Such apposition is also found in the opinion in *Moore* v. *Moore* (*supra*, 431–433). Even in respect to judgment$ of sister States of the Union, the Legislature enacted a restricted provision. It granted the equitable relief afforded domestic judgments of divorce to judgments of sister States of the Union only where such were based on adultery.

It is further to be noted that section 47 of the General Construction Law provides that the term " State," when used generally to include every State of the United States, includes also every Territory of the same and the District of Columbia. There is no intimation here that, even in the case of a broad use of the word " State," it should embrace territory alien and foreign.

Further force is lent to this conclusion when it is recalled that the recognition of valid decrees of sister States of the Union is obligatory upon this jurisdiction under the Federal Constitution, whereas those rendered by alien jurisdictions are accorded recognition only through comity. The former must be recognized without question; the latter only in the discretion of the court guided and controlled, among other things, by the circumstances of the particular case. (*Hubbard* v. *Hubbard, supra; Gould* v. *Gould, supra.*)

As the complaint states no cause of action cognizable in equity and prays for but equitable relief, the complaint should be dismissed, the motion having been made before answer. (*Low* v. *Swartwout*, 171 App. Div. 725; *Gosselin Corp.* v. *Mario Tapparelli, etc.*, 191 id. 580; affd., 229 N. Y. 596; *Standard Film Service Company* v. *Alexander Film Corporation*, 214 App. Div. 701.)

The order should be reversed, with ten dollars costs and disbursements, and the motion to dismiss granted, with ten dollars

costs, but without prejudice to the service of a complaint in an action at law, if the plaintiff be so advised.

DOWLING, P. J., McAVOY and MARTIN, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting). The complaint states a cause of action at law, with a prayer for so-called equitable relief in respect to the enforcement of the judgment. This prayer for relief does not make the action an equitable one. This court said in *Miller* v. *Miller* (219 App. Div. 61; affd., 246 N. Y. 636), in considering a complaint involving the same question as here presented: " The law is well settled that an action can be brought in this State upon a judgment of this nature and a money judgment procured for alimony. Such a judgment, when obtained, can be enforced in accordance with our laws applicable thereto. The action, however, is not an equitable one, although the court may, in certain cases, under the provisions of section 1171 of the Civil Practice Act, grant relief of an equitable nature." Also, as was said by this court in *Beeck* v. *Beeck* (211 App. Div. 720) in passing upon a similar question: " It, therefore, follows that the plaintiff unquestionably has a right to bring this action and to ask judgment against the defendant for the various sums adjudged to be paid her by the defendant in the Rhode Island decree. The mere fact that the plaintiff states she has no adequate remedy at law is not fatal for the reason that the prayer for relief governs. Whether the court can or will grant the so-called equitable remedies under present section 1171 of the Civil Practice Act is a secondary question and has to do simply with the enforcement of a money judgment in this State when obtained. Under her complaint, the plaintiff can go to trial and establish her right to a money judgment against the defendant in this State. When the right to such judgment is established, the question respecting its enforcement will be important."

The complaint, therefore, stated a good cause of action at law, and the motion to dismiss the same was properly denied and the order entered thereon should be affirmed. The fact that the plaintiff has asked in her complaint for a judgment covering alimony accruing subsequent to the date of the commencement of the action will not in itself render the complaint defective. In an action at law as distinct from equity the rule is, of course, applicable that the judgment shall relate to the date of the commencement of the action. In so far as the prayer transcends this rule, however, it may be disregarded. Whether or not the plaintiff, since she is suing on the foreign judgment, is entitled to the remedial pro-

visions of sections 1171, 1171a and 1172 of the Civil Practice Act depends upon the construction to be given the word "State" as used in said sections. In my opinion the learned Special Term was correct in holding that the word was used in its generic sense, as referring to a sovereign body politic whether that sovereign body politic be a State of the United States or a foreign country. The reasons for this follow.

Prior to 1904 it was held that equitable remedies were not available to a plaintiff seeking to enforce in this State the provisions of a foreign judgment of divorce in so far as alimony had accrued thereunder, but that such judgment in this respect might be enforced only by execution, as a judicial debt of record. In *Lynde* v. *Lynde* (162 N. Y. 405, 420) it was said by Judge GRAY: "So far, therefore, as the final decree in the court in New Jersey adjudged moneys to be due and payable to the plaintiff from the defendant, it became a judicial debt of record, which the former was entitled to have enforced by the courts of this State, under the provisions of the Federal Constitution, and a judgment recovered thereupon could be executed only as our laws permit * * * which would not include the particular equitable remedies, provided by the statute in the chapter on matrimonial actions."

In other words, as the action was at law and, therefore, a money judgment resulted, execution was the only enforcement remedy available. Therefore, in order to afford a plaintiff (who in a majority of cases is a woman with young children, suing upon a foreign decree of divorce obtained in a jurisdiction from which the defendant has fled to avoid his matrimonial and probably parental obligation) a more effective remedy than the often abortive one of an execution returned unsatisfied (because of the inability of the sheriff to reach intangible and concealed personal property), the Legislature in 1904 amended section 1772 of the Code of Civil Procedure (now section 1171 of the Civil Practice Act). As amended this section now provides that where a judgment rendered in another State upon the ground of adultery upon which an action has been brought in this State and judgment rendered therein requires the husband to provide for the education or maintenance of any of the children of a marriage, or for the support of his wife, the court may, in its discretion, apply the same remedies for enforcement as to a judgment rendered in this State.

Did the Legislature intend, as urged by the appellant, to limit this beneficent provision to judgments obtained only within a State of the United States and not a foreign State? No good reason appears why the word "State" should not be given its broad generic meaning, namely: "A political community organized

under a distinct government recognized and conformed to by the people as supreme; a commonwealth; a nation." (Funk & Wagnalls' Standard Dictionary.) Viewed from another angle, why should the Legislature be held to have discriminated between a case where a resident plaintiff of this State has obtained a judgment against an absconding husband across the border in New Jersey and a case where such a plaintiff has obtained a like judgment across the border in Canada? Before the amendment a plaintiff who had obtained a divorce in a foreign country where both parties had submitted to the jurisdiction of the court could obtain a judgment at law on a parity with a plaintiff who had obtained a like judgment in a sister State (although the plaintiff from a sister State had in addition to comity, the full faith and credit clause of the Federal Constitution to rely upon). No valid reason is suggested why there should now be held to be discrimination in the remedies provided by the Legislature in sections 1171, 1171a and 1172 of the Civil Practice Act. The Legislature has been careful to provide that the basis of the foreign judgment sought to be enforced must be for the same causes specified by the law of this State, and has even left the application of the remedies provided to the discretion of our own court.

In many instances, in the Civil Practice Act and elsewhere, a statute indicates that a term is to be employed in the limited sense. At other times the purpose of the legislation shows a wider scope was clearly intended. It is a well-settled canon of statutory construction that a construction of a statute which will work inequality or injustice is to be avoided when possible. As was said by Judge COLLIN in *Matter of Meyer* (209 N. Y. 386, 389): "It is always presumed, in regard to a statute, that no unjust or unreasonable result was intended by the Legislature. Hence, if viewing a statute from the standpoint of the literal sense of its language, it works such a result, an obscurity of meaning exists, calling for judicial construction. Where a particular application of a statute in accordance with its apparent intention will occasion great inconvenience or produce inequality or injustice, another and more reasonable interpretation is to be sought. * * * The courts must in that event look to the act as a whole, to the subject with which it deals, to the reason and spirit of the enactment, and thereby determine the true legislative intention and purpose; and if such purpose is reasonably within the scope of the language used, it must be taken to be a part of the statute the same as if it were plainly expressed. To effect the intention of the Legislature the words of a single provision may be enlarged or restrained in their

meaning and operation, and language general in expression may be subjected to exceptions through implication."

In *Foster* v. *Stevens* (63 Vt. 175) the court found it necessary to define the meaning of the word " State " as used in a statute granting an exemption from taxation, reading in part as follows: " Shares of stock in a corporation situated in another State, when all the stock of such corporation is taxed in such State, to the holders, whether residing within or without such State, or when the corporation is taxed in such State for all its stock." The court said: " We think the word ' State ' employed in the statute should be construed to mean a foreign State as well as one of the United States. The statute was enacted for the relief and benefit of stockholders; therefore upon the reason of the law shares of stock in a foreign corporation should be exempt as well as those in a corporation located in one of the States of this Union."

In the construction of the section now under consideration it is unnecessary to go as far as *Matter of Meyer* (*supra*) in order to avoid inequality or injustice, since if the word " State " is given its ordinary generic meaning of a political community organized under a distinct government, and a limited meaning (for which no reason appears in the context of the section) avoided, no unfortunate results will arise.

I am in accord with the opinion of the learned court at Special Term and vote to affirm.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, but without prejudice to the service of a complaint in an action at law, if the plaintiff be so advised.