MARGARET M. MITCHELL, Plaintiff, *v.* RALPH W. MITCHELL, Defendant.

Supreme Court, Special Term, New York County, January 3, 1949.

*Christensen & Curtis* for plaintiff.

*A. Edward Masters* for defendant.

BENVENGA, J. Motion by plaintiff wife for leave to enter judgment for arrears in payment of alimony under a decree of divorce rendered by a Mexican court upon the personal appearance of plaintiff and the appearance of defendant by an attorney.

The question presented is whether, under section 1171-b of the Civil Practice Act (added by L. 1939, ch. 431, as amd.), the plaintiff is entitled to the relief demanded. So far as pertinent, the section reads: " Where the husband, in an action for divorce, * * * makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the

court in its discretion may make an order directing the entry of judgment for the amount of such arrears * * *.''

The section also provides that the money judgment so entered " may be enforced by execution " and declares that the relief is " in addition " to any and every other remedy to which the wife may be entitled under the law (§ 1171-b); namely, the giving of security for the payment of alimony, sequestration of defendant's property, receivership, and contempt proceedings (see Civ. Prac. Act, §§ 1171–1172).

(1) There can be no doubt that, under the circumstances of this case, the Mexican decree, being valid, is entitled to recognition on principles of comity (*Boissevain* v. *Boissevain*, 252 N. Y. 178, 180; *Gould* v. *Gould*, 235 N. Y. 14); and, since unpaid alimony is treated as a judicial debt of record, an action may be maintained to recover unpaid alimony due under the decree (*Lynde* v. *Lynde*, 162 N. Y. 405, 420; *Miller* v. *Miller*, 219 App. Div. 61, 62; affd. 246 N. Y. 636; *Boissevain* v. *Boissevain*, 224 App. Div. 576, 579; mod. 252 N. Y. 178; *Smith* v. *Smith*, 255 App. Div. 652, 654, 656–657). The specific problem presented, however, is whether the Mexican decree may be enforced by the entry of judgment and execution without first bringing action thereon and reducing the debt to a domestic judgment.

(2) Prior to 1904, it was settled that the equitable remedies of security, sequestration, receivership and contempt were limited to domestic judgments (*Lynde* v. *Lynde*, 162 N. Y. 405, 418, *supra*); that the alimony provisions in a judgment of divorce granted by a foreign country were not entitled to enforcement through our courts of equity on the principle of comity (*Wood* v. *Wood*, 7 Misc. 579, 581–582; *Lynde* v. *Lynde*, 41 App. Div. 280, 286–287, affd. 162 N. Y. 405; *Boissevain* v. *Boissevain*, 129 Misc. 5, 7); nor were such provisions in a judgment rendered by a sister State entitled to such equitable enforcement under the " good faith and credit " clause of the Federal Constitution (*Lynde* v. *Lynde*, 162 N. Y. 405, 418–420, *supra*; *Boissevain* v. *Boissevain*, 224 App. Div. 576, 578; mod. 252 N. Y. 178, *supra*).

To remedy this condition, sections 1171 and 1172 of the Civil Practice Act (formerly Code Civ. Pro., §§ 1772, 1773), were amended so as to extend the remedies of security, sequestration, receivership and contempt to judgments for divorce obtained in other States of the Union on the ground of adultery (*Moore* v. *Moore*, 143 App. Div. 428, 431, affd. 208 N. Y. 97, 99–100; *Boissevain* v. *Boissevain*, 224 App. Div. 576, 578, *supra; Smith* v. *Smith*, 255 App. Div. 652, 654, *supra*). Nevertheless, even at the present time, these equitable remedies do not apply to judgments

truly foreign; namely, judgments of "foreign countries" (*Boissevain* v. *Boissevain*, 252 N. Y. 178, 181–182, *supra*; *Wood* v. *Wood*, 7 Misc. 579, 581–582, *supra*). Nor do they apply unless an action is brought to recover the unpaid alimony and the foreign judgment is made the judgment of our courts (*Wemple* v. *Wemple*, 219 App. Div. 241; *Smith* v. *Smith*, 255 App. Div. 652, 658, *supra*; *Hardy* v. *Hardy*, 136 Misc. 759, 760; *Rohden*, v. *Rohden*, 119 Misc. 624, 625). In short, as has been pointed out, sections 1171 and 1172, as amended, "merely extend and make available to judgments of *other States* the equitable remedies of sequestration, receivership, etc., *only after such judgments have been reduced to judgment in the courts of this State.*" (Italics supplied. *Smith* v. *Smith*, 249 App. Div. 660.)

The general rule may, therefore, be regarded as well settled that, except insofar as jurisdiction is expressly conferred by statute, the courts of this State are without authority to enforce, by way of specific equitable relief, the alimony provisions of a decree rendered in a foreign State or country, unless action for the accrued alimony is reduced to judgment in this State.

(3) It is elementary that statutes *in pari materia* should be construed together. Section 1171-b, here under consideration, should therefore be interpreted with reference to sections 1171 and 1172 (*Miller* v. *Miller*, 219 App. Div. 61, 64–65, affd. 246 N. Y. 636, *supra*; Black, Interpretation of Laws [2d ed.] 331). All these sections treat of equitable remedies. Section 1171-b is but part of the legislative scheme or pattern designed to compel recalcitrant husbands to comply with the alimony provisions of a judgment or order.

Moreover, section 1171-b should be construed in the light of the history of sections 1171 and 1172 (*Woollcott* v. *Shubert*, 217 N. Y. 212, 221; Black, Interpretation of Laws, p. 285). In this connection, it is to be noted that, prior to 1904, sections 1171 and 1172 were as broadly worded as section 1171-b is at the present time, and that, to remedy the condition pointed out in the *Lynde* case (*supra*), section 1171 was amended to include the words "or a judgment rendered in another State for divorce upon the ground of adultery", and section 1172 was amended to embody the phrase "for the enforcement in this State of a judgment for divorce or separation rendered in another State" (see *Boissevain* v. *Boissevain*, 224 App. Div. 576, 578, *supra*).

It is fair to assume that the Legislature, at the time of the enactment of section 1171-b, was familiar with the history of sections 1171 and 1172 and the construction placed upon them

by our courts. It is equally fair to assume that, if the Legislature had intended, by the enactment of section 1171-b, to provide for the enforcement of the alimony provisions of foreign decrees of divorce without first bringing action for the accrued alimony and reducing the debt to a domestic judgment, it would have so provided in clear and unmistakable language (*Boissevain* v. *Boissevain,* 252 N. Y. 178, 181, 182, *supra*). Not having done so, section 1171-b, upon elementary principles, should not be extended by construction beyond its express terms or the reasonable implications of its language. (*Boissevain* v. *Boissevain, supra;* Black, Interpretation of Laws, p. 367).

Clearly, the construction contended for, if adopted, would lead to absurd consequences. Since the remedy provided by section 1171-b is, as has been pointed out, " in addition " to the other equitable remedies provided by law, the effect of such a construction would be to nullify, by implication, the construction heretofore placed by our courts upon sections 1171 and 1172. It must be presumed that the Legislature did not intend that such absurd consequences should flow from the enactment of section 1171-b (Black, Interpretation of Laws, p. 129).

It would seem to follow, therefore, that the equitable remedy of judgment and execution, provided in section 1171-b, is not available to a party unless and until action is brought on the accrued alimony and the judgment or decree of the foreign State or country is made the judgment of this court.

The motion is denied.