Samuel Rabin, J.
In an action by a husband to annul his marriage the defendant wife counterclaimed for a separation.
The parties were married in Queens County, New York, on June 7, 1953, following the entry of a decree of divorce which the defendant obtained against her first husband Norman F. Bechtold in the State of Chihuahua, the Republic of Mexico, on May 12, 1953. There is no issue of the marriage between the parties to this action.
The defendant and her first husband were living apart for some time prior to May, 1953. He lived in Binghamton, New York, and she in the County of Queens, New York, where the plaintiff also resided. They were long-time friends and sufficiently interested in each other to contemplate matrimony if the defendant could obtain her freedom from her first husband. They consulted counsel and then went to Binghamton where they conferred with Bechtold, who executed a power of attorney dated April 25, 1953, authorizing a named attorney in Mexico to appear and represent him in a divorce action which was to be instituted by the defendant in that country.
On May 10, 1953, the defendant went to the City of Juarez, Mexico, where through an attorney she commenced an action for a divorce. She presented herself before the clerk of the court, filed her petition for a divorce, and presented certain witnesses. The attorney designated in the power of attorney executed by defendant’s first husband filed a notice of appearance on his behalf and a final decree of divorce was granted on May 12, 1953. The defendant immediately returned to her home in this county, and less than a month later married the plaintiff.
Although the plaintiff aided and abetted the defendant to obtain her Mexican decree, and indeed financed the entire project, that factor does not bar him from attacking the Mexican decree. (Jackson v. Jackson, 274 App. Div. 43; Honig v. Honig, 267 App. Div. 908.) Nevertheless such decree, grounded as it was upon the personal appearance of the defendant in the divorce granting court and the filing of a notice of appearance by her first husband through an attorney designated by him, is entitled to recognition under the doctrine of comity. (Laff v. Laff, 4 A D 2d 874, affg. 5 Misc 2d 554; Caswell v. Caswell, 111 N. Y. S. 2d 875, affd. 280 App. Div. 969; Mitchell v. Mitchell, 194 Misc. 73; Matter of Fleischer, 192 Misc. 777, 779-780; Costi v. Costi, 133 N. Y. S. 2d 447.)
Since the defendant’s decree of divorce from her first husband was valid she had legal capacity subsequently to marry the plaintiff, and the court finds that she thereby became and still *846 is Ms lawful wife. Plaintiff’s complaint is, accordingly, dismissed on the merits.
Defendant’s counterclaim for a separation is based upon charges of cruel and inhuman treatment, and plaintiff’s alleged failure to provide her with adequate support and maintenance in that he gave her only approximately $12 per week “ to live upon, to clothe herself, to pay for necessary medical and dental attention and for other necessary purposes and needs.”
The court finds from the evidence that defendant has failed to establish by a preponderance of believable proof that the plaintiff struck her, that he embarrassed her in front of others, called her vile names, imputed unchastity to her, or that he was guilty of conduct making it unsafe for her to live with him. Indeed, the parties have continued to live under one roof although in fact separated for all intents and purposes.
On the question of defendant’s claim that plaintiff did not support her in accordance with his means, it appears that although defendant knew when she married the plaintiff that he had assets of over $60,000, she was content to live on a modest scale. The court finds that from the date of the marriage in June, 1953 until at least through April, 1955, the plaintiff gave the defendant approximately $50 per week for food for the household, her clothing and incidental expenses. That arrangement appears to have been made pursuant to a discussion by the parties, at which time a budget was arrived at and fixed in the sum of $54 per week, to be allocated for food, clothing, vacations and household needs.
There was a sharp conflict in the testimony as to what occurred after April, 1955, although it is conceded that early in 1955 plaintiff asked the defendant to try to get along on $35 per week instead of $54; that the defendant refused and insisted upon the continuance of the $54 per week allowance. Indeed she demanded a joint bank account as well as joint ownership of the home the parties then occupied, title to which was in plaintiff’s name alone. The court finds that the plaintiff did establish a joint bank account but refused to give the defendant any interest in the house or to continue paying her $54 per week as requested. Even before any radical change in the parties’ financial arrangement had taken place, defendant did not deny that she left the bedroom occupied by the parties and refused to live with the plaintiff as man and wife. In that connection the court is not satisfied that this was done on doctor’s orders. In any event, on May 1, 1955, defendant *847 stopped cooking for the plaintiff, although as already noted they continued to live in the same house. Defendant claims that that he gave her no more than $7 or $8 per week for the 19-week period commencing May 26, 1955. While admitting that the amounts he gave the defendant varied, plaintiff testified that they were substantial and that he offered her sufficient money for her support but that she refused to accept the amount offered, insisting on $54 per week or nothing. Plaintiff testified that he left sufficient money in a cupboard to which she had access, with the understanding that he would replenish the amount so that she would continue to have $35 per week, the amount to which he sought to reduce their living expenses. Defendant claimed that she never looked into the cupboard and, therefore, did not know whether the plaintiff placed any money therein.
The court is satisfied from all of the evidence that the plaintiff paid all of the carrying charges of the home occupied by the parties and in addition offered the defendant at least $35 per week for her household expenses; that from January 8 through April 23, 1955, defendant received from the plaintiff payments varying from $45 to $86 per week; that on February 2, 1956, the approximate date on which plaintiff commenced this action and defendant commenced proceedings against bim in the Domestic Relations Court, there was a balance of $1,138.02 in the joint bank account which was maintained in the names of both parties, on which date the plaintiff closed out said account. There is nothing in the record to indicate that the defendant did not have access to this account during the entire period up to February 2, 1956.
The court is of the opinion that the defendant has failed to establish her counterclaim by a fair preponderance of the credible proof. Accordingly, it is dismissed on the merits. The defendant, however, is allowed an additional counsel fee in the sum of $350 for legal services necessarily rendered and disbursements incurred on behalf of the defendant in connection with this action, Special Term having directed the payment of a counsel fee by order dated April 3, 1956, without prejudice to an application to the trial court for an additional amount.
It is regrettable that the parties to this action did not see fit to compose their differences in a spirit of compromise but insisted on an all or nothing attitude with respect to such differences which originally were essentially rooted in money matters. The court, from its observation of these mature parties, feels that this marriage can still be redeemed by that *848 spirit of compromise, which it hopes they will adopt to keep their marriage alive.
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment in accordance, without costs.