## STRAUSS v. STRAUSS.

(Supreme Court, Appellate Division, First Department. December 20, 1907.)

1. JUDGMENT—CONCLUSIVENESS.

Where a court of general jurisdiction, having jurisdiction over the subject-matter, acquires jurisdiction over the person of defendant, and a final judgment is entered, it is conclusive, not only in the sovereignty of the forum, but wherever the question is presented.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1445–1457.]

2. APPEARANCE—EFFECT.

Code Civ. Proc. § 424, formulating the rule that a voluntary appearance in an action is equivalent to personal service of process within the jurisdiction of the court, is declaratory of the common law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appearance, § 91.]

3. JUDGMENT—FOREIGN JUDGMENT—CONCLUSIVENESS—EFFECT.

Where, in a suit in Illinois for divorce, defendant, though not served with process, voluntarily appeared and filed an answer and cross-bill seeking a divorce, and the answer denied the allegations of the complaint, to the effect that complainant had been an actual resident of Illinois for the period required by the statute as a prerequisite to the maintenance of a suit for divorce, and the Illinois court was one of general jurisdiction, having jurisdiction of the subject-matter, the final judgment granting a divorce was conclusive in New York.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1445–1457.]

Appeal from Special Term.

Action by Alice K. Strauss against Leo Strauss. Appeal by defendant from an order denying a motion to vacate an order of arrest. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Charles Goldsier, for appellant.
I. N. Jacobson, for respondent.

INGRAHAM, J. The facts in this case, which are not disputed, are that the plaintiff and defendant were married in the state of New Jersey on the 20th of May, 1888, and lived together until the fall of 1903, when they separated; that in August, 1905, the defendant com-

menced an action against the plaintiff for divorce in the state of Illinois on the ground of abandonment, the defendant alleging in his bill of divorce that he had been an actual resident of the state of Illinois for more than a year prior to the commencement of the proceeding. The plaintiff claims that she was not served with process personally within the state of Illinois, that she had never been domiciled in that state, or that the parties never had a matrimonial domicile there. The plaintiff in this action, however, appeared in the action in the state of Illinois, and interposed an answer verified by her, denying the material allegations of the complaint, and filed a cross-bill asking for a divorce from the defendant. She then applied for alimony, and obtained an order from the Illinois court in which the action was pending requiring the defendant in this action, the plaintiff in that, to pay $15 a week alimony. This alimony being in arrears and pending the final disposition of the action in Illinois, the plaintiff in this action seems to have made a proposition that the defendant in this action should pay her $1,000 in full settlement of all alimony. The defendant accepted this offer, and paid the $1,000 in full settlement of all alimony which plaintiff received. Thereafter, on June 14, 1907, a decree was entered in the superior court of Cook county in the state of Illinois reciting that the cause "coming on now to be heard, upon the bill of complaint filed herein, and the answer filed thereto by the defendant, and the replication filed by the complainant, and the court, having heard all the evidence adduced herein by the complainant, and having heard the arguments of counsel, and being fully advised in the premises, finds that the said defendant, Alice Strauss, has willfully deserted herself from her husband, Leo Strauss, said complainant, without any reasonable cause, for the space of two (2) years," and therefore ordered, adjudged, and decreed that the complainant be ·divorced from the defendant, released from the obligations of his marriage, and restored to all and singular the rights and privileges of an unmarried man.

It does not seem to be disputed but that at the time of the commencement of the action, and for over one year prior thereto, the complainant in the Illinois action had been a resident of the state of Illinois, and commenced his action for a divorce in that state in good faith, and that the defendant in that action appeared therein, interposed an answer, denying the allegation of residence, and filed a cross-bill for a divorce. It is a principle of universal application that where a court of general jurisdiction, having jurisdiction over the subject-matter of a controversy, acquires jurisdiction over the person of defendant and a judgment is entered finally determining the controversy, such a judgment becomes an adjudication that is conclusive, not only within the sovereignty in which the court which rendered the judgment is located, but wherever the question thus determined is presented. The binding force of such an adjudication does not depend upon any provision of the Constitution of the United States, but upon the general principle of the common law, and this principle has always been recognized and enforced in this state. It is also a general principle that a voluntary appearance in an action is equivalent to per-

sonal service of the process within the jurisdiction of the court in which the action is pending. This rule is formulated in the Code of Civil Procedure (section 424), but is also a rule of common law. In Reed v. Chilson, 142 N. Y. 152, 36 N. E. 884, it was said:

"When a party does not intend to subject himself to the jurisdiction of the court, he must appear specially for the purpose of raising the question of jurisdiction by motion, or he may allow the plaintiff to go on and take judgment by default without affecting his rights, since no judgment entered without service of process in some form could bind the defendant, and the question of jurisdiction would protect him at any stage of the proceedings for its enforcement, provided it has not been waived by his own act. But, if the defendant elects to come before the court and there try the questions, he cannot afterwards deny the jurisdiction, or be heard to claim that it was not a voluntary appearance. The court had jurisdiction of the subject of the action. It was the judgment of the courts of a sister state which the plaintiff had the right to enforce here if jurisdiction of the person could be obtained, though the defendant resided in another state."

The court in Illinois having acquired jurisdiction over the parties to this action and having jurisdiction to pronounce a decree of divorce, the case came on for hearing, and, upon the evidence, the court determined the issues presented in favor of the defendant here, and granted to him a decree of divorce, which, under the rule before stated, becomes res adjudicata as to the relations of the parties to each other. The very issue presented by the answer in the Illinois action required the court to determine as to the residence of the plaintiff there, and, the question at issue having been determined by a court of competent jurisdiction having jurisdiction over both the parties, it becomes a binding adjudication, and settles the relations of the parties to each other.

It is necessary to refer to but two or three later cases where this principle has been expressly recognized and enforced. In Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132, the question presented was as to whether a divorce granted in the state of Illinois was binding upon the parties to the action in which the judgment of divorce was entered. Church, C. J., there said:

"If the Illinois judgment was binding upon the parties to it, and if the defendant and her former husband were divorced by that judgment, as between themselves their marriage was not in force when the plaintiff and defendant were married. The complaint alleges that the husband went to Chicago and filed his bill in a court of equity, and that the defendant appeared and put in an answer, denying the equities of the bill, and that afterward, by collusion, a decree of divorce was entered as though no answer had been interposed. The court had jurisdiction of the subject-matter of the action—that is, it had jurisdiction to decree divorces according to the laws of that state—and every state has the right to determine for itself the ground upon which it will dissolve the marriage relation of those within its jurisdiction. The court also had jurisdiction of the parties by the voluntary appearance of the defendant. These are the facts stated. * * * Having jurisdiction of the subject-matter and of the parties, the other questions relating to the pleadings and the form and manner of procedure were matters of regularity merely, for which the judgment cannot be questioned collaterally. * * * The question whether he was a resident there, so as to enable him to file his bill, was for that court to determine, and, although it may have decided erroneously, the decision cannot affect the validity of the judgment. The status of all persons within a state is exclusively for that state to determine for itself. * * * Sufficient facts are alleged to give the Illinois court power to decide the question of domicile, and the judgment is not void if we concede

that the decision was erroneous, and if it is also conceded that the question of residence is vital to give jurisdiction. A wrong decision does not impair the power to decide, or the validity of the decision when questioned collateral-ly."

And this principle has been recognized in every case in which the question has been presented to the present time. See Lynde v. Lynde, 162 N. Y. 405, 56 N. E. 979, 48 L. R. A. 679, 76 Am. St. Rep. 332. This same principle is extended in Starbuck v. Starbuck, 173 N. Y. 503, 66 N. E. 193, 93 Am. St. Rep. 631, to a case where a plaintiff obtained a decree of divorce as against the defendant who had not been served by process within the jurisdiction of the court granting the decree or personally appeared in the action; and, although the decree did not bind the defendant in that action, it was held. that the plaintiff, having invoked the jurisdiction of a foreign court and submitted herself thereto, could not be heard to question the validity of its decree. This principle has also been expressly recognized by the Supreme Court of the United States in many cases, notably in Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366, 40 L. Ed. 525, where the court said:

"As this record discloses that the defendant was served with process under the original bill, and appeared by counsel, and made answer, and was personally served with a copy of the supplemental bill and with an order to plead, and, after permitting himself to be defaulted, did appear by counsel and procured the vacation of the original decree and the enrolment of the decree amended in accordance with his own motion, it may fairly be said that he both had an opportunity to be heard and was heard. His appearance by counsel under the supplementary proceedings was not to object to the jurisdiction of the court, but to effect a change in the recitals of the decree on nonjurisdictional grounds."

Counsel for the plaintiff seems to think that certain late decisions of the Supreme Court of the United States have changed or modified this principle, and cites Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, and Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. Ed. 366. The only question before the Supreme Court of the United States in those cases was as to the obligation of the state court under the full faith and credit provisions of the federal Constitution in relation to judgments of sister states. It did not determine what judgments of sister states the courts of any state would recognize. In Andrews v. Andrews, supra, what was decided was:

"A state may forbid the enforcement within its borders of a decree of divorce procured by its own citizens who, whilst retaining their domicile in the prohibiting state, have gone into another state to procure a divorce in fraud of the law of the domicile"

—a decision certainly which cannot affect the power of a state to recognize a divorce granted by the courts of a sister state where the court had jurisdiction over the parties to the action in which the judgment was entered.

In Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, the question presented was in relation to a judgment entered against a nonresident upon constructive service of process, and without acquiring jurisdiction over the person of defendant. The judgment in that case relied on was based upon the service of process by publication, and the defendant had not appeared in the action, and

the discussion related solely to a judgment obtained under such circumstances. In summing up a discussion as to the force of the provisions of the federal Constitution, it is there said:

"It has, moreover, been decided that, where a bona fide domicile has been acquired in a state by either of the parties to a marriage, and a suit is brought by the domiciled party in such state for a divorce, the courts of that state, if they acquire personal jurisdiction also of the other party, have authority to enter a decree of divorce entitled to be enforced in every state by the full faith and credit clause. Cheever v. Wilson, 9 Wall. (U. S.) 108, 19 L. Ed. 604. * * * On the other hand, the denial of the power to enforce in another state a decree of divorce rendered against a person who was not subject to the jurisdiction of the state in which the decree was rendered obviates all the contradictions and inconveniences' which are above indicated. It leaves uncurtailed the legitimate power of all the states over a subject peculiarly within their authority, and thus not only enables them to maintain their public policy, but also to protect the individual rights of their citizens. It does not deprive a state of the power to render a decree of divorce susceptible of being enforced within its borders as to the person within the jurisdiction, and does not debar other states from giving such effect to a judgment of that character as they may elect to do under mere principles of state comity. It causes the full faith and credit clause of the Constitution to operate upon decrees in the respective states just as that clause operates upon other rights; that is, it compels all the states to recognize and enforce a judgment of divorce rendered in other states where both parties were subject to the jurisdiction of the state in which the decree was rendered, and it enables the states rendering such decrees to take into view for the purpose of the exercise of their authority the existence of a matrimonial domicile from which the presence of a party not physically present within the borders of a state may be constructively found to exist."

It seems to me, therefore, that these decisions of the Supreme Court of the United States have no relation to the question as to the effect which will be given to a decree of divorce of the courts of a sister state, and the principles that are well settled in this state and have been universally enforced are that such decrees are binding upon the parties where the court granting the decree or judgment had jurisdiction to grant a divorce and obtained jurisdiction over the parties to the action either by personal service within its jurisdiction or voluntary appearance. It follows, therefore, that upon the conceded facts the decree in the court of Illinois granting to the defendant in this action a divorce from the plaintiff terminated the matrimonial relations between the parties to this action, and that, therefore, upon the undisputed facts, there was no marriage relation existing, and the action cannot be maintained.

For these reasons, no order of arrest should have been granted in the action, and the order appealed from must be reversed, with $10 costs and disbursements, and the motion to vacate the order of arrest granted, with $10 costs. All concur.