EDITH KELLY GOULD, Respondent, *v.* FRANK JAY GOULD, Appellant.

First Department, May 5, 1922.

Husband and wife — divorce — application for counsel fees not granted where wife cannot succeed in action — answer alleges divorce granted by French courts in defendant's favor on ground of adultery and also that plaintiff was convicted by French courts of crime of adultery — reply did not deny facts — plaintiff by failure to reply admits adultery as proven on criminal prosecution in France — French decree of divorce binding — allowance of counsel fees refused.

One of the considerations to granting an allowance of counsel fees to the wife in an action for divorce is, whether there is reasonable ground to believe that she will succeed in the litigation and upon the appeal.

The plaintiff is not entitled to an allowance for counsel fees, where the defendant in his answer alleges that a decree of absolute divorce was granted to him by the French courts in an action against the present plaintiff, and that the present plaintiff was convicted by the French courts of the crime of adultery committed with the corespondent in the divorce action, and plaintiff's reply does not deny the facts alleged against her in defendant's answer, except that the courts of France were without jurisdiction, for the plaintiff cannot succeed in this action for two reasons: *First,* she has, by failure to deny the allegations concerning her conviction of the crime of adultery in France, admitted that she was guilty thereof; *second,* the French decree granting the defendant an absolute divorce from the plaintiff is binding upon her, and she is no longer the wife of the defendant, for said decree was based on the ground of adultery which is a ground recognized by our laws, the offense was committed in France while both parties were living there, the action was commenced by the personal service of process, the plaintiff herein appeared in France by an attorney and the issues of law and fact were decided in the French courts, up to the court of last resort, against her upon the merits, and there is no allegation in plaintiff's reply that she did not have full opportunity to produce evidence in the French courts or that there was any fraud.

APPEAL by the defendant, Frank Jay Gould, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the

6th day of December, 1921, directing the defendant to pay to the plaintiff counsel fees for the purpose of prosecuting an appeal from a judgment dismissing the complaint herein.

*Leonard & Walker* [*Samuel Seabury* of counsel; *Walter B. Walker* with him on the brief], for the appellant.

*Jenks & Rogers* [*Almet F. Jenks* of counsel; *Gustavus A. Rogers, Tudor Jenks* and *Gardiner Conroy* with him on the brief], and *Eugene E. Sperry*, for the respondent.

PAGE, J.:

In 1910 the parties hereto were married in Scotland. They resided in New York city until 1913, since which time, until 1918, when they separated, they lived together in France. In April, 1920, the plaintiff brought this action for an absolute divorce. The defendant answered, denying the material allegations of the complaint and pleading as a defense that in November, 1918, he brought an action in the Civil Tribunal of Versailles, Department of Seine-et-Oise, Republic of France, by personal service of process in Paris, France, against the plaintiff herein for an absolute divorce on the ground of the plaintiff's adultery with one Cassassus in Paris, France. A judgment was granted in this defendant's favor, after a hearing, the plaintiff herein having made default. Thereafter on petition of the plaintiff, the court granted a new trial of all the issues of law and fact. Upon such trial the plaintiff herein duly appeared by solicitor. This trial resulted in a judgment upon the merits in favor of the defendant herein against this plaintiff, and granted to him an absolute divorce on the ground of this plaintiff's adultery with said Cassassus. From this judgment the plaintiff herein appealed to the Cour d'Appel of Paris, which after hearing the plaintiff and defendant herein rendered judgment affirming in all respects the judgment of the Civil Tribunal of Versailles. Thereafter the plaintiff herein filed with the Chambre de Requête of the Court of Cassation of the Republic of France a petition for leave to appeal from the last-mentioned judgment to the Court of Cassation. The said Chambre de Requête of the Court of Cassation duly made a judgment that the courts of France had jurisdiction of the person and subject-matter and denied the said petition; that under the laws of the Republic of France said judgment of the Chambre de Requête of the Court of Cassation is final and no appeal can be taken therefrom.

Attached to the answer were copies of the judgments and the record of the French courts and also a duly authenticated record of the proceedings and judgment wherein this plaintiff and Cassassus were adjudged guilty of adultery and fined.

A reply to this defense was served by order of the court, in which the plaintiff did not deny the facts alleged against her, except that the judgments were duly rendered in that the courts of France were without jurisdiction to decree a divorce.

On this appeal from the order granting counsel fees to prosecute an appeal from a judgment the parties have fully argued the questions that would come before the court on such appeal. These questions necessarily arise, for one of the considerations to granting an allowance of counsel fee to the plaintiff is, whether there is reasonable ground to believe that she will succeed in the litigation and upon the appeal. (*De Vide* v. *De Vide*, 186 App. Div. 814, 816; *Poss* v. *Poss*, 164 id. 213, 215; *Dye* v. *Dye*, 140 id. 309, 310; *Greenberg* v. *Greenberg*, 134 id. 419, 421.)

With the fact admitted, by failure to deny, that the plaintiff had been herself guilty of adultery, proved in a court of France on a prosecution for a misdemeanor against the laws of that country, where the offense was committed, resulting in a judgment of conviction from which no appeal was taken, it is demonstrated beyond the possibility of argument that she cannot succeed in this litigation. Whatever question the plaintiff might raise as to the jurisdiction of the courts of France to grant the decree of divorce, there can be no question of the jurisdiction of the courts of that country to punish an American citizen who violates its penal laws while present within its territory. And the facts upon which that adjudication was made stand admitted herein. There could, therefore, if the judgment were reversed, and the parties sent to trial, be but one result — the plaintiff's complaint would be dismissed.

The learned justice at Special Term granted the allowance, for the reason, as he stated, that " the Federal court in *Hilton* v. *Guyot* (159 U. S. 113) has held that a final judgment of a French court, even in a commercial case, is not conclusive, but merely *prima facie* evidence of the merits, and that there apparently has been no decision by our State appellate courts to the contrary."

The decision of *Hilton* v. *Guyot* was not, that because the laws of France refused to give full faith and credit to the judgments of our courts we will, therefore, not recognize the validity and binding effect of any judgment of the courts of that country. In that case the judgment upon which the action was brought was of the Tribunal of Commerce of the Department of the Seine, a judicial tribunal or court organized and existing under the laws of France, sitting at Paris, and having jurisdiction of suits and controversies between merchants and traders growing out of commercial dealings between them. The judges of that court were

merchants, ship captains, stockbrokers and persons engaged in commercial pursuits, of which the plaintiff's assignor had been a member until shortly before the commencement of the litigation; witnesses were not sworn, nor was there an opportunity to cross-examine adverse witnesses given; the court declined to compel the production of books and papers of plaintiff's assignor and various other practices were alleged which were contrary to the orderly administration of justice according to the law and practice of the courts of this country. Furthermore the answer pleaded the articles of the Code de Procedure Civile, which provided that judgments rendered by foreign tribunals should be capable of execution in France only as they have been declared in force by a French tribunal; and the construction given by the courts that no comity is displayed toward the judgments of tribunals of foreign countries against citizens of France, when sued upon in France, and the merits of the controversies are examined anew. It was upon these facts that the decision was based, and it was practically limited by the court to executing judgment for debt. The court said (pp. 166–170):

" In order to appreciate the weight of the various authorities cited at the bar, it is important to distinguish different kinds of judgments. Every foreign judgment, of whatever nature, in order to be entitled to any effect, must have been rendered by a court having jurisdiction of the cause, and upon regular proceedings and due notice. In alluding to different kinds of judgments, therefore, such jurisdiction, proceedings and notice will be assumed. It will also be assumed that they are untainted by fraud, the effect of which will be considered later.

" A judgment *in rem*, adjudicating the title to a ship or other movable property within the custody of the Court, is treated as valid everywhere. * * *

" A judgment affecting the status of persons, such as a decree confirming or dissolving a marriage, is recognized as valid in every country, unless contrary to the policy of its own law. [*Cottington's Case*, 2 Swanston, 326; *Roach* v. *Garvan*, 1 Ves. Sen. 157; *Harvey* v. *Farnie*, L. R. 8 App. Cas. 43; *Cheely* v. *Clayton*, 110 U. S. 701.] It was of a foreign sentence of divorce, that Lord Chancellor Notting-ham, in the House of Lords, in 1678, in *Cottington's Case*, above cited, said: ' It is against the law of nations not to give credit to the judgments and sentences of foreign countries, till they be reversed by the law, and according to the form, of those countries wherein they were given. For what right hath one kingdom to reverse the judgment of another? And how can we refuse to let a sentence take place till it be reversed? And what confusion

would follow in Christendom, if they should serve us so abroad, and give no credit to our sentences.'

" Other judgments, not strictly *in rem*, under which a person has been compelled to pay money, are so far conclusive that the justice of the payment cannot be impeached in another country so as to compel him to pay it again.   *  *  *

" Other foreign judgments which have been held conclusive of the matter adjudged were judgments discharging obligations contracted in the foreign country between citizens or residents thereof.   *  *  *

" The extraterritorial effect of judgments *in personam*, at law or in equity, may differ, according to the parties to the cause. A judgment of that kind between two citizens or residents of the country, and thereby subject to the jurisdiction in which it is rendered, may be held conclusive as between them everywhere. So, if a foreigner invokes the jurisdiction by bringing an action against a citizen, both may be held bound by a judgment in favor of either. And if a citizen sues a foreigner, and judgment is rendered in favor of the latter, both may be held equally bound."

The court then proceeded to discuss the effect to which a judgment, purely executory, rendered in favor of a citizen or resident of the country, in a suit brought by him against a foreigner, may be entitled in an action thereon against the latter in his own country, and as a conclusion said: " When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, an opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that, by the principles of international law, and by the comity of our own country it should not be given full credit and effect." (p. 205.) It was to these executory judgments for the recovery of money that the court considered the lack of comity between France and the United States, in recognizing their conclusiveness, and further said: " In holding such a judgment, for want of reciprocity, not to be conclusive evidence of the merits of the claim, we do not proceed upon any theory of retaliation

upon one person by reason of injustice done to another; but upon the broad ground that international law is founded upon mutuality and reciprocity, and that by the principles of international law recognized in most civilized nations, and by the comity of our own country, which it is our judicial duty to know and to declare, the judgment is not entitled to be considered conclusive." (p. 228.) It is very clear that *Hilton* v. *Guyot* (*supra*) has no application to the instant case. The action in the French courts was for a divorce *a vinculo* upon the ground recognized by the laws of this State as sufficient to support such a judgment as was therein rendered. (See Code Civ. Proc. § 1756 *et seq.;* now Civ. Prac. Act, § 1147 *et seq.*) For five years the parties had lived in France, cohabiting as man and wife. They were both living there when the action was brought. The offense was committed in that jurisdiction. The action was commenced by the personal service of process, and the plaintiff herein appeared by attorney, and the issues of law and fact were decided against her upon the merits. The reply does not allege that full opportunity was not given to produce evidence. Nor is there any charge of fraud. The sole denial is that the judgments were duly rendered, without the statement of a single fact from which that conclusion was drawn. The judgment dissolving the marriage between these parties for the cause proved was not contrary to, but in harmony with, the laws of our State, and under the exceptions stated in *Hilton* v. *Guyot* (*supra,* 167) should be recognized as conclusive. From the foregoing it would follow that at the time the plaintiff commenced this action she was not the wife of the defendant, and hence there is no basis for the order allowing her a counsel fee to be paid by the defendant. (*Lake* v. *Lake,* 194 N. Y. 179, 185; *Farnham* v. *Farnham,* 227 id. 155, 158.)

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.