EDITH K. GOULD, Appellant, *v.* FRANK J. GOULD,
Respondent.

**Husband and wife — divorce — former adjudication —
comity — foreign judgment of divorce — effect thereof for
courts to determine — when foreign judgment properly
recognized — adjudication of marital status not necessarily
confined to courts of domicile.**

1. The legislature, in providing that the judicial proceedings of
foreign jurisdictions, when authenticated as prescribed by it, should
be evidence (Code Civ. Pro. §§ 952, 953; Civ. Pr. Act, §§ 395, 396),

and expressly omitting to declare the effect of such evidence (Code Civ. Pro. § 954; Civ. Pr. Act, § 397), clearly indicated that it intended that the effect of the evidence should be determined by the court in which an action or proceeding is pending and in which action or proceeding a judgment of a foreign jurisdiction is relied upon in whole or in part to establish or defeat a material issue therein.

2. Whether or not the operation of a foreign decree of divorce in a given case will contravene the policy or wrong or injure citizens of the state is exclusively for its courts to determine. (*Hubbard* v. *Hubbard*, 228 N. Y. 81, 85, followed.)

3. In an action for an absolute divorce the pleadings disclose that after the marriage of plaintiff and defendant in Scotland, they lived in New York for about three years when they departed from the United States and thereafter for more than five years dwelt as husband and wife in France, the defendant owning and maintaining a home there, after which the plaintiff went to England and took up her residence there; that prior to her departure from France the plaintiff commenced an action for divorce in a court of original general jurisdiction competent under the laws of France to render judgments divorcing husband and wife, in which she alleged that she was of English nationality; that two months thereafter the defendant commenced a similar action in the same court against this plaintiff which action resulted in a judgment adjudging that plaintiff had committed adultery in the city of Paris and, applying the laws of this state, that for such fault on the part of this plaintiff the marriage of plaintiff and defendant should be dissolved; that thereafter upon a new trial plaintiff raised the question of the competency of the court to entertain the action and the court in again adjudging this plaintiff guilty of adultery held that it had jurisdiction, which holding was thereafter affirmed on appeal. ·*Held*, that, on a motion for judgment on the pleadings in this action, the Special Term was justified in holding that within the principle of comity the judgment of the courts of France should be recognized and given the effect of a judicial determination and that no marital relation between plaintiff and defendant existed at the time of the commencement of this action.

4. A contention that as no foreign judgment can be rendered executory in France without a review of the judgment *au fond*, the courts of this state should adopt a like procedure as to judgment of the courts of France, cannot be sustained. (*Hilton* v. *Guyot*, 159 U. S. 113, distinguished; *Lazier* v. *Westcott*, 26 N. Y. 146, 150, followed.)

5. Nor can a contention that the marital status of a person can be adjudicated only by the courts wherein the person is domiciled be sustained. Assuming that defendant could have but one domicile,

he was not obligated to reside at such domicile, but was privileged, as he did, to establish a residence in France, where the contract of marriage was being performed. Under the circumstances of this case the policy of this state is not offended by the recognition of the judgments of the courts of France.

*Gould* v. *Gould*, 201 App. Div. 670, affirmed.

· (Argued October 17, 1922; decided January 30, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 15, 1922, which unanimously affirmed a judgment in favor of defendant entered upon an order of Special Term granting a motion by defendant for judgment on the pleadings and directing a dismissal of the complaint.

*Almet F. Jenks, Gustavus A. Rogers, Gardiner Conroy* and *Harry L. Kreeger* for appellant. Judgments rendered in France, or in any other foreign country, by the laws of which our own judgments are reviewable upon the merits, are not entitled to full credit and conclusive effect when sued upon in this country, but are *prima facie* evidence only of the justice of the plaintiff's claim. · (*Hilton* v. *Guyot*, 159 U. S. 113; *Grubel* v. *Nassaucr*, 210 N. Y. 150; *Ritchie* v. *McMullen*, 159 U. S. 235; *Lazier* v. *Westcott*, 26 N. Y. 146; *Newton* v. *Hunt*, 59 Misc. Rep. 633.) The judgment of the French court· decreeing a divorce between these parties should not be recognized in this state. (*De Meli* v. *De Meli*, 120 N. Y. 485; *Matter of Newcomb*, 192 N. Y. 239; *U. S. Trust Co.* v. *Hart*, 150 App. Div. 413; 208 N. Y. 617; *Dupuy* v. *Wurtz*, 53 N. Y. 556; *Matter of Lydig*, 191 App. Div. 117.) The common-law theory of private international law is that the marital status of a person can be adjudicated only by the courts of the jurisdiction wherein the person is domiciled. (1 Wharton on Confl. of Laws, 436; *Le Mesurier* v. *Le Mesurier*, 1895 A. C. 517; *Haddock* v. *Haddock*, 201 U. S. 562; *De Meli* v. *De Meli*, 120

N. Y. 485; *Ditson* v. *Ditson*, 4 R. I. 87; *State* v. *Armington*, 25 Minn. 29; *Hoffman* v. *Hoffman*, 46 N. Y. 30; *Winston* v. *Winston*, 165 N. Y. 553; *Tysen* v. *Tysen*, 140 App. Div. 370; *Bersey* v. *Adriance*, 157 App. Div. 628; *Bell* v. *Bell*, 181 U. S. 175; *Streitwolf* v. *Streitwolf*, 181 U. S. 179.) Matrimonial domicile involves an actual domicile of at least one party. (*Atherton* v. *Atherton*, 181 U. S. 155; *Haddock* v. *Haddock*, 201 U. S. 561; *Thompson* v. *Thompson*, 226 U. S. 551; *Post* v. *Post*, 149 App. Div. 452; 210 N. Y. 607; *Schenker* v. *Schenker*, 181 App. Div. 621; 228 N. Y. 600; *Kaufman* v. *Kaufman*, 177 App. Div. 162.) The plaintiff is not precluded from her attack upon the French judgment, upon the ground of incompetency of the French court, by the fact that she began a suit in the French courts. (*Matter of Morrison*, 52 Hun, 102; 117 N. Y. 638; *Starbuck* v. *Starbuck*, 173 N. Y. 503.)

*Samuel Seabury* and *Walter B. Walker* for respondent. The judgments of the courts of France decreeing a divorce in favor of respondent and against appellant for her adultery are in entire accord with the principles of morality and the public policy of the state of New York and are entitled to recognition upon the principle of comity in the exercise by our courts of a sound judicial discretion. (*Hubbard* v. *Hubbard*, 228 N. Y. 81; *Post* v. *Post*, 149 App. Div. 452; 210 N. Y. 607; *Pearson* v. *Pearson*, 187 App. Div. 645; 230 N. Y. 141; *Tiedemann* v. *Tiedemann*, 172 App. Div. 819; 225 N. Y. 709; *Strauss* v. *Strauss*, 122 App. Div. 729; *Jones* v. *Jones*, 108 N. Y. 415; *Guggenheim* v. *Guggenheim*, 201 N. Y. 602; *Guggenheim* v. *Wahl*, 203 N. Y. 390; *Stewart* v. *Stewart*, 198 App. Div. 337.) The courts of this state should give effect to the French decree of divorce because granted by the court of the matrimonial domicile upon personal service, appearance of defendant and litigation of the

2

merits. (*Le Mesurier* v. *Le Mesurier*, 1895 A. C. 517; *Armitage* v. *Atty.-Gen.*, 1906 P. D. 135; *Cass* v. *Cass*, 26 T. L. R. 305; *Rontey* v. *Rontey*, 101 Misc. Rep. 166.) The courts of France had jurisdiction of the subject-matter as well as the person of defendant and the decree of divorce is conclusive on the merits and not subject to collateral attack. (*Thompson* v. *Thompson*, 226 U. S. 551; *Reed* v. *Chilson*, 142 N. Y. 152; *Guggenheim* v. *Wahl*, 203 N. Y. 390; *Strauss* v. *Strauss*, 122 App. Div. 729; *Jones* v. *Jones*, 108 N. Y. 415; *Reilly* v. *Steinhart*, 217 N. Y. 549.) Appellant herein cannot be heard to question the validity, force and effect of the French decrees divorcing her for her adultery. (*Hubbard* v. *Hubbard*, 228 N. Y. 81; *Starbuck* v. *Starbuck*, 173 N. Y. 503; *Kaufman* v. *Kaufman*, 177 App. Div. 162; *Reed* v. *Chilson,* 142 N. Y. 152; *Richards* v. *Richards*, 87 Misc. Rep. 134; 167 App. Div. 922; *Berry* v. *Berry*, 130 App. Div. 53.)

HOGAN, J. This action was commenced by plaintiff April 23d, 1920, for an absolute divorce upon the usual statutory grounds. Defendant by his answer in the action denied the charges of misconduct made against him in the complaint and set forth several separate and affirmative defenses. Pursuant to an order of the court the plaintiff served a reply to the second and sixth separate defenses. Thereupon defendant moved for judgment on the pleadings which motion was granted and the complaint dismissed on the merits upon the ground that the plaintiff herein was not at the time of the commencement of this action the wife of the defendant. Judgment upon the order so made was thereafter entered and upon appeal therefrom the same was unanimously affirmed by the Appellate Division and permission to appeal to this court granted.

The pleadings in this action disclose the following uncontroverted facts:

Plaintiff and defendant were married at Edinburgh, Scotland, in October, 1910, and thereafter from time to time lived in the city of New York down to some time in the year 1913, when they departed from the United States and thereafter did not dwell as husband and wife in the city of New York but did dwell in the republic of France, the defendant continuously, the plaintiff until the summer of 1919, when she went to England and took up her residence there. Since that time she has been in the United States but once. In October, 1919, she came here and remained until early in December, when after verifying the complaint in this action, she departed from the United States and has since absented herself therefrom.

The Civil Tribunal of Versailles, Department of Seine-et-Oise, Republic of France, is a court of record of original general jurisdiction, competent under the laws of the republic of France to render judgments divorcing husband and wife on the ground of adultery.

September 12th, 1918, the plaintiff commenced an action in the Civil Tribunal of Versailles, France, for an absolute divorce. In the petition filed by her she alleged that she was of English nationality, that she had been married to defendant in Scotland without ante-nuptial contract, that immediately after the marriage she and defendant came to reside permanently in France, and then alleged acts of misconduct of defendant to entitle her to an absolute divorce. She also asked that defendant be summoned for the purpose of an attempt at reconciliation, as required by French law. Thereupon in the regular course prescribed by French law she made a petition for divorce, asked that she be authorized to pursue the proceedings commenced by her until a final judgment should be taken; to withdraw the suspension of the running of all periods of time; to authorize the execution of all intermediate judgments, and to authorize her to follow up the proceedings until a decision on the merits

could be had, etc. On October 4th, 1918, such order was made by the French court. Thereafter, on October 11th, 1918, plaintiff took judgment of non-conciliation and was awarded alimony of 3,000 francs per month. Dissatisfied with such allowance, on the 18th day of October, 1918, she took an appeal from that part of the judgment which limited the amount of such alimony. In accordance with the rights conferred upon her by the French law relating to community property, seals were placed upon certain personal property belonging to the defendant in his home and office in France. Defendant was notified that an inventory of the property so sealed was to be taken. On the 15th day of November, 1918, said seals were removed by reason of plaintiff's failure to proceed with her action within twenty days as required by French law, from which order raising the seals an appeal was also taken by plaintiff to the Court of Appeals at Paris, France. On the hearing of such appeals plaintiff did not appear in support thereof. The time for plaintiff to proceed in such action has not expired under French law. Defendant asserts that plaintiff is thereby estopped from maintaining this action.

In November, 1918, sometime within two months after the plaintiff had commenced her action as stated, the defendant commenced an action in the Civil Tribunal of Versailles, the same court in which the action as stated was brought by plaintiff, wherein the defendant here, plaintiff in said action, sought an absolute divorce from plaintiff here upon the ground of her adultery. This plaintiff as such defendant in that action defaulted, and on April 16th, 1919, the Civil Tribunal adjudged and determined that this plaintiff had committed adultery in the city of Paris, as alleged by her husband, this defendant, and for such fault on the part of the wife, this plaintiff, that the marriage of plaintiff and defendant should be dissolved. The judgment entered recited that plaintiff here had been caught in the act of adultery with

one Cassasus as charged against her on September 3, 1918, in the city of Paris, and had admitted she had been living with him maritally for about four months past, and

" WHEREAS, the spouses Goulds are both of American nationality, the husband by birth, the wife in consequence of her marriage: That under these circumstances, it being a question of the State, their national law must be applied:

" WHEREAS, under the laws, customs and jurisprudence of the State of New York, from which the plaintiff Gould comes, that in that State, adultery which may be established by all means of proof, is a cause for divorce:

" Pronounces the immediate divorce between the spouses Gould on the petition and in favor of the husband."

Thereafter, on June 16th, 1919, the plaintiff here demanded and was accorded as of right under the laws of France a new trial of all issues of law and fact involved in the action brought against her by this defendant, including the charge of adultery.

Upon the new trial before the Civil Tribunal, this plaintiff first raised the question of the competency of the court to entertain such action and render a judgment, as plaintiff's husband had on various occasions pleaded he was domiciled in New York and had only a temporary residence in France, and asking in case such plea of competency of the court was disallowed that she be allowed to deny the facts alleged by Mr. Gould, reserving the right to make a cross-demand and all incidents which she should deem advisable.

In addition she duly appeared and interposed defenses on the merits to such action and asked affirmative relief therein against this defendant. Upon the issue thus joined a trial *de novo* was had and judgment on the merits was rendered by the Civil Tribunal December 9th, 1919, in favor of this defendant adjudging amongst other

decrees that this plaintiff had committed adultery as charged by the husband and that the judgment theretofore rendered divorcing the defendant herein for the fault of plaintiff herein should have full force and effect. The decision of the court recited that the competence of French courts as between foreigners is optional, the parties having the right to decline their jurisdiction and the courts having the power to refuse to adjudicate, and that " Whereas, by reason of the nature of the matter, such action being based on adultery committed in France, it is not proper for the tribunal to declare itself incompetent; " that Mrs. Gould had not raised her objection at the proper time; that she had notice of the proceedings, and did not allege lack of knowledge thereof; that she had theretofore commenced an action for divorce against this defendant in the French courts, same tribunal. It then proceeded on the merits, stating that plaintiff having confined herself to a denial of the facts which led to the judgment of default, and it having been conclusively established by the *proces-verbal* of police that she had been caught in the act of adultery alleged by her husband and had admitted she was living with the corespondent as husband and wife, that she must be nonsuited as her opposition was unfounded.

From such judgment plaintiff took an appeal to the Court of Appeals of Paris, in which all the questions raised, including the power and jurisdiction of the Court of Civil Tribunal, were presented and argued; also that plaintiff had not proceeded in her French action by reason of the fact that in various hearings for the affixation and raising of the seals on defendant's property, the latter claimed his domicile to be in America and his domicile and status as an American citizen, and that she " had brought her demand before the competent courts of the United States." The Court of Appeals of Paris after reciting all the facts and argument of counsel held that the position taken by plaintiff was inconsistent with the

conclusions by which she denies the competency of the French judges, that by first beginning herself a divorce proceeding against her husband before the Court of Versailles she manifested her intention to put herself under French jurisdiction; that she had persisted in that intention when her husband brought suit against her by safeguarding by formal reservations her right to renew in the form of a counter-suit her own divorce case; that she had failed to avail herself of her objections at the proper time, etc., and concluded: " Considering that in keeping the jurisdiction of the case the court rests upon the ground that the divorce proceedings are based upon acts of adultery committed in France and that the said court correctly found that as the wrongs invoked were connected with the sojourn of the married couple in France, the French courts were properly qualified to pass upon them," and as she had failed to prove the adultery alleged against her husband, while that committed by her was proven under conditions which permit no discussion, the court confirmed the judgment below.

In September, 1920, this plaintiff pursuant to the laws of France in such case provided filed a petition wherein she prayed for leave to take an appeal to the Court of Cassation from the judgment of the Court of Appeals. On December 8th, 1920, the Court of Cassation made a judgment, wherein amongst other determinations it adjudged that the courts of France had jurisdiction of the person and subject-matter and denied the petition of the plaintiff herein. Said judgment is final and no appeal can be taken therefrom.

Defendant in his answer further alleged that he had continuously dwelt in the republic of France for upwards of seven years last past (prior to December 13th, 1920), during which period of time he had owned, maintained, occupied and dwelt in a home in France. The reply served by plaintiff admitted such allegation of the answer.

The opinion of the justice presiding at Special Term

discloses that the court held that within the principle of comity the judgments of the courts of France should be recognized and given the effect of a judicial determination; that no marital relation between plaintiff and defendant existed at the time of the commencement of the action. The opinion of the Appellate Division is in harmony with the views expressed in the opinion of the justice at Special Term.

Authenticated copies of the various judicial proceedings and records of the courts of France, a synopsis of which has hereinbefore been recited, were annexed to and made a part of the answer of defendant.

Sections 395, 396, Civil Practice Act, formerly sections 952, 953, Civil Code, in substance provide that a copy of a record or other judicial proceeding of a court of a foreign country " is evidence " when authenticated or attested in the manner provided in said sections.

Section 397, Civil Practice Act, formerly section 954, Civil Code, provides: " Nothing in the last two sections is to be construed as declaring the *effect* of a record or other judicial proceeding of a foreign country authenticated so as to be evidence."

The sections cited are a re-enactment of like provisions embodied in the Revised Statutes (Part 3, chapter 7, title 3, sections 26, 27, 28). The act of the legislature in thus providing that records and judicial proceedings of a court of a foreign country should be evidence and thereupon expressly declaring that the statute should not be construed as a declaration of the *effect* of such evidence, was a departure from the prevailing custom of declaring in like statutes evidence to be *prima facie* presumptive or conclusive, as appears in numerous provisions of the Civil Practice Act. The omission of the legislature to declare the *effect* of a judgment of a foreign jurisdiction was obviously due to the fact that it appreciated that the full faith and credit clause of the Federal Constitution was inapplicable to judgments of the courts of foreign

countries; of the doctrine of comity between nations and likewise of a non-uniformity of laws in various foreign jurisdictions. In providing that the judicial proceedings of foreign jurisdictions, when authenticated as prescribed by it, should be evidence, expressly omitting to declare the *effect* of such evidence, clearly indicates that it intended that the *effect* of the evidence should be determined by the court in which an action or proceeding was pending and in which action or proceeding a judgment of a foreign jurisdiction was relied upon in whole or in part to establish or defeat a material issue therein.

In *Hubbard* v. *Hubbard* (228 N. Y. 81, 85) we held that as the law of this state had provided but one sufficient cause, to wit, adultery, for absolute divorce, the policy of this state " exists to promote the permanency of the marriage contract and the morality of the citizens of the state. Whether or not the operation of a foreign decree of divorce in a given case will contravene the policy or wrong or injure citizens of the state is exclusively for its courts to determine. They are the final judges of the occasions on which the exercise of comity will or will not make for justice or morality. The exercise rests in sound judicial discretion guided and controlled by the policy of the state, relevant judicial decisions and the circumstances of the case."

In the foregoing excerpt from the opinion in the *Hubbard* case, we find clearly defined the policy of this state, the nature of the sound judical discretion to be exercised by the courts and the limitation upon the exercise of such discretion. We may assume that the justice at Special Term in determining the effect to be given to the judgments of the courts of France gave consideration to the fact that the republic of France was one of the independent powers of the world, having diplomatic intercourse with the United States. Thereupon from the judgments and pleadings, briefly to recapitulate, there was disclosed absence of collusion between the parties.

Adultery is a cause for absolute divorce and a crime by the laws of this state and of the republic of France. Plaintiff and defendant had for a number of years permanently resided in France as husband and wife in a home owned and maintained by defendant. During that time the parties had not been in this state or country. In an action brought in France by defendant against plaintiff for absolute divorce plaintiff was personally served with process and contested so far as able to do so in the courts of France the action brought against her. She contested the jurisdiction of the court notwithstanding she had invoked the jurisdiction of the same court in an action brought by her against defendant for like cause which is still pending. Thus both parties, though Americans, invoked the jurisdiction of the French courts.

The courts of France applied the law of this state in the judgment. After the recovery of the judgment against plaintiff in France, she left that country, returned to England, from whence she originally came, and only visited this state to invoke the jurisdiction of our courts in the present action. The defendant has no apparent intention to return to this state in which he claims a legal domicile, but to permanently reside in France.

The justice at Special Term held that the judgments of the courts of France were in harmony with the policy of this state; that the effect to be given to the evidence of such judgments was, that the courts of France had jurisdiction of the person of defendant and subject-matter of the action; that the judgment operated to dissolve the marital relation between the parties and for a cause for which a judgment would be granted in this state, and that plaintiff herein was not at the time of the commencement of this action entitled to maintain the same.

In view of the enumerated facts, the circumstances of this case, the policy of this state and the principles of comity, we are led to the conclusion that the effect given

the judgments of the courts of France by the justice at Special Term, affirmed by the Appellate Division, was justified unless two additional propositions presented to us operate to the contrary.

Counsel for plaintiff, appellant, argued that as no foreign judgment can be rendered executory in France without a review of the judgment *au fond*, the courts of this state should adopt a like procedure as to judgments of the courts of France, and in support of his argument placed reliance on the decision of the Supreme Court of the United States in *Hilton* v. *Guyot* (159 U. S. 113, decided October, 1894).

At the Appellate Division, Justice PAGE, writing for the court for reversal of an order which granted counsel fee to plaintiff in this action (201 App. Div. 127), reviewed the *Hilton* case at length, pointed out the nature of the judgment there under consideration, made quotations from the opinion in the case, and reached a conclusion that the *Hilton* case was inapplicable to the instant case. The opinion in the *Hilton* case covers upwards of one hundred pages of the volume of the report. A further review of the same is unnecessary save the quotation of two excerpts from the opinion directly applicable to this case. On page 130 the opinion proceeds:

"A judgment affecting the status of persons, such as a decree confirming or dissolving a marriage, is recognized as valid in every country, unless contrary to the policy of its own law. *Cottington's Case,* 2 Swanston, 326; *Roach* v. *Garvan,* 1 Ves. Sen. 157; *Harvey* v. *Farnie,* L. R. 8 App. Cas. 43; *Cheely* v. *Clayton,* 110 U. S. 701. It was of a foreign sentence of divorce, that Lord Chancellor NOTTINGHAM, in the House of Lords, in 1688, in *Cottington's Case,* above cited, said: ' It is against the law of nations not to give credit to the judgments and sentences of foreign countries, till they be reversed by the law, and according to the form, of those countries wherein they were given. For what right hath one kingdom to

reverse the judgment of another?  And how can we refuse to let a sentence take place till it be reversed?  And what confusion would follow in Christendom, if they should serve us so abroad, and give no credit to our sentences.' "

(Page 202.)  " In view of all the authorities upon the subject, and of the trend of judicial opinion in this country and in England, following the lead of Kent and Story, we are satisfied that, where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact."

This court in *Lazier* v. *Westcott* (26 N. Y. 146, at p. 150 and following) passed upon the question of the effect of a judgment of a court of a foreign country, called attention to the manner of proving such a judgment as hereinbefore discussed, quoted from the opinion of Chief Justice KENT in *Taylor* v. *Bryden* (8 Johns. 173) and from Justice Story on Conflict of Laws, and is in harmony with what has here been written.  The case was cited in the opinion in the *Hilton* case (p. 195) and approved in *Dunstan* v. *Higgins* (138 N. Y. 70, 74, 75).

Counsel for appellant further argued that the marital status of a person can be adjudicated only by the courts wherein the person is domiciled.  The judgment recites that in the petition presented by Mr. Gould he set forth

that as an American citizen he married on October 29th, 1910, the plaintiff and seeks a divorce from her on the grounds stated. The petition made no mention of the domicile of the defendant. The preliminary part of the judgment recited that defendant was domiciled at Tarrytown, United States.

At the time of the marriage of the parties to this action the husband, defendant, was domiciled in the state of New York, where they continued to reside until 1913, when they went to France. The legal domicile of both parties in 1913 was the state of New York. Evidently the defendant intended at all times to continue to remain a citizen of this state and eventually to dispose of his estate under the law of the state relating to the succession to his property. Nevertheless, he became a resident of France and with his wife resided there in a home owned and maintained by him for a substantial time, to wit, upwards of five years, when by reason of her misconduct committed in France he obtained a judgment against her, as he might have done had he brought the action in this state. Assuming that defendant could have but one domicile, he was not obligated to reside at such domicile, but was privileged, as he did, to establish a residence in France, where the contract of marriage was being performed.

Under the circumstances of this case, the policy of this state is not offended by the recognition of the judgments of the courts of France. Even though it be assumed that we are not required because of the absence of domicile to give effect to their judgments, we are not prohibited from doing so where recognition, in conformity to the principle of comity, would not offend our public policy. If in the instant case the judgments of the courts of France disclosed that the parties were merely sojourning in France at the time the decree of divorce was granted, or that a residence in France was of such limited duration as to lead the Supreme Court to believe that the decree

was the result of collusion, or the judgment was rendered for a cause not recognized as sufficient cause for absolute divorce by the law of this state, it may be that the justice presiding would be justified in holding that the decree was contrary to the policy of this state and in a refusal to give effect to the evidence sought to be established thereby. We leave those questions open.

The judgment should be affirmed.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment affirmed.