OTILLIE MARGARETE MARTENS, Respondent, *v.* HELLMUTH MARTENS, Appellant.

First Department, May 31, 1940.

*Louis Jay Brecher* of counsel [*Maurice Freiman* with him on the brief; *Joseph M. Herman*, attorney], for the appellant.

*George Stamper* of counsel [*Morris & Stamper*, attorneys], for the respondent.

COHN, J.   Upon instituting this action for absolute divorce, plaintiff moved for alimony *pendente lite* and counsel fee.   Defendant made a cross-motion pursuant to subdivision 5 of rule 107 of the Rules of Civil Practice, to dismiss the complaint upon the ground that there is an existing final judgment of divorce dissolving the marriage between the parties rendered by a court of competent jurisdiction.   The Special Term allowed plaintiff a counsel fee and denied defendant's cross-motion, holding that there is an issue of fact concerning the validity of the foreign decree in this State because of the provisions of subdivision 4 of section 1153 of the Civil Practice Act.

In support of the cross-motion, defendant annexed to his papers a duly authenticated translation of a final decree of divorce entered on November 7, 1932, by the Hanseatic Court of Appeal at Hamburg, Germany, providing for a dissolution of the marital relationship between plaintiff and defendant.   This exhibit recites that the present defendant instituted the action against the present plaintiff in the Eighth Civil Division of the Hamburg District Court; that the present plaintiff interposed a counterclaim for divorce; that both parties were represented by counsel; that the trial court dismissed both the complaint and counterclaim; that defendant in the present action appealed and the plaintiff herein filed a cross-appeal.   The appellate court in Germany ruled that each party was guilty of misconduct, granted the application of both, and thereupon dissolved the marriage.

It appears from the affidavits of plaintiff that the parties were married in Hamburg, Germany, on May 13, 1921; that they remained in that country until January, 1927, when the defendant came to America; that he became a resident of the city of New York and has continued to be so up to the present time; that in 1927 he duly declared his intention of becoming an American citizen, and that he became a citizen five years later.

Plaintiff also sets forth that defendant came to this country to establish a home and that after having procured a position, he wrote to her to proceed here with their child; that she arrived in December, 1928; that upon her arrival, plaintiff remained at a hotel with defendant in the city of New York for a few days; that defendant then sent plaintiff and the child to his sister in Cleveland, Ohio, while he made a business trip to South America; that in May, 1929, plaintiff returned to New York at her husband's request, to await his return from South America; that when he came back from the trip, they remained at the same hotel in New York for one night, and that thereafter differences arose between the parties and they no longer resided together.

Plaintiff further alleges that after she had become a resident of New York she declared her intention to become an American citizen in May, 1929, and received her final citizenship papers in September, 1934. She also states that neither she nor defendant ever returned to Germany after arriving in this country. Attention is also called by plaintiff to the fact that the German decree on which defendant's cross-motion is based recites separate New York city addresses for each of the parties.

On June 2, 1934, defendant remarried. Notwithstanding plaintiff's admitted knowledge of this fact since about December, 1935, the present action was not commenced by her until February 9, 1940.

The mandate of the Federal Constitution (Art. IV, § 1) which requires that full faith and credit shall be given to the judicial proceedings of every other State has no application to the case at bar. The question here is merely one of comity of nations by which the judicial decrees of a country are recognized within the confines of another nation. In the exercise of comity, our courts will give faith and credit to the decrees of foreign countries, affecting the status of a person, such as confirming or dissolving a marriage. (*Gould* v. *Gould*, 235 N. Y. 14, 27, 28; *Johnston* v. *Comp. Generale Transatlantique*, 242 id. 381; *Hilton* v. *Guyot*, 159 U. S. 113, 167; *Hansen* v. *Hansen*, 255 App. Div. 1016.) Such a decree " can be impeached only by proof that the court in which it was rendered had not jurisdiction of the subject-matter of the action or of the person of the defendant, or that it was procured by means of fraud." (*Dunstan* v. *Higgins*, 138 N. Y. 70, 74.)

Whether or not the operation of a foreign decree of divorce in a given case will contravene the policy of our own laws or injure the citizens of this State is exclusively for our courts to determine. The exercise of comity rests in sound judicial discretion guided and controlled by the policy of the State, relevant judicial decisions and

the circumstances of the case. (*Hubbard* v. *Hubbard*, 228 N. Y. 81, 85.) In the absence of special reasons why comity should not be exercised, a judgment of divorce rendered in the courts of a foreign country will be recognized here and the case may not be tried anew upon the mere assertion of a party that the judgment was erroneous in law or in fact. (*Gould* v. *Gould*, *supra*, at p. 28.)

There is no charge that the decree of the German court was obtained by fraud nor is it claimed by plaintiff that the foreign court lacked jurisdiction of the subject-matter of the action. Plaintiff's sole contention is that the foreign court did not have jurisdiction over her person since neither of the parties was in Germany at the time the action was instituted nor at any time thereafter.

We think her contention is lacking in merit. The claim is, of course, necessarily predicated upon the assumption that there was a change of matrimonial domicile from Germany to New York. If there had been no change in matrimonial domicile, it would be immaterial whether either of the parties was actually present in Germany at the time the action was instituted there. Were there any doubt in the mind of the plaintiff at the time she was defending the prior action as to whether there had been a change of the matrimonial domicile from Germany to New York, the question if raised could have been resolved by the German court. Whether plaintiff actually raised the question of jurisdiction in the foreign court is immaterial now. The important fact is she had the opportunity of doing so. She could not, in the circumstances, reserve the determination of that question for the New York courts in a subsequent action. Whether the matrimonial domicile was in Germany constituted a matter for the German court to determine. Though that court may have decided erroneously, the decision cannot affect the validity of the judgment.

Concededly, plaintiff not only appeared as defendant in the suit brought in the foreign court, but she defended the action brought by her husband. In addition thereto, by counterclaim she sought and obtained a decree of divorce in the same foreign jurisdiction where the parties had been married and where both had thereafter resided as husband and wife.

Plaintiff attempts to contrast the facts here with those in *Matter of Alzmann* v. *Maher* (231 App. Div. 139) and *May* v. *May* (251 id. 63). In each of those cases it was held that a decree of the courts of Mexico was invalid despite the appearance of the defendant because the parties were residents of this State and had never been in Mexico. In *Vose* v. *Vose* (280 N. Y. 779) neither of the parties ever had left this State but obtained a Mexican judgment of divorce by means of correspondence through the mails. In all

of these instances, unlike the situation in the case at bar, the foreign court did not have the slightest semblance of jurisdiction to act.

Nor is this case similar to those in which the courts here have refused to recognize the divorce decrees of our sister States, where the parties had no matrimonial domicile and defendant was served only by publication or without the State. The circumstances here are fundamentally the same as those in *Tiedemann* v. *Tiedemann* (172 App. Div. 819; affd., 225 N. Y. 709; appeal dismissed, 251 U. S. 536). There the defendant who had appeared as defendant in a prior Nevada action for divorce endeavored to show that, at the time the Nevada suit was commenced and the decree entered, both parties were domiciled in Connecticut and that without proof of domicile of one of the parties in Nevada, jurisdiction could not be conferred upon the Nevada courts either by appearance or by consent. Justice LAUGHLIN, writing for this court, said: " The Nevada District Court concededly had jurisdiction of the parties, and with such jurisdiction it was competent for that court to determine the essential facts with respect to domicile to confer jurisdiction upon it over the subject-matter of the action; and whether the question with respect to the plaintiff's residence in that State was actually litigated, or by the defendant's default was determined under the law of the State on the allegations of the complaint, is, I think, immaterial, for there is in the decision upon which the decree was entered an adjudication that the plaintiff was a resident of that State, which the Supreme Court of Nevada deemed equivalent to domicile."

The decree of the German court, in the exercise of comity, is entitled to full faith and credit in this State. Our public policy would not be offended, as the Special Term suggests, because the foreign decree of divorce was granted to both parties on the ground that each of them was guilty of misconduct. Subdivision 4 of section 1153 of the Civil Practice Act prohibits the granting of a divorce to a plaintiff, though adultery of the defendant be established, where the plaintiff has also been guilty of such misconduct. However, the laws of New York have no operation in foreign jurisdictions. The situation is scarcely different in effect than in the case of a foreign decree of absolute divorce granted on grounds other than adultery. Though the only basis for such a judgment in this State is adultery, our courts, nevertheless, are required to grant due recognition to decrees of sister States rendered upon grounds which would not have been a cause for divorce here, where the court had jurisdiction of both the parties and the subject-matter. (*Haddock* v. *Haddock*, 201 U. S. 562. See, also, 2 Schouler on Marriage, Divorce, Separation and Domestic Relations [6th ed.], § 1954, p. 2080.)

In this case there is no issue of fact to be determined. Upon the uncontradicted proof submitted, defendant is entitled to judgment dismissing the complaint as a valid decree of divorce had been granted dissolving the marriage between the parties by a court of competent jurisdiction prior to the commencement of this action.

The order should be reversed, the plaintiff's motion should be denied and defendant's cross-motion to dismiss the complaint granted.

MARTIN, P. J., O'MALLEY, GLENNON and CALLAHAN, JJ., concur.

Order unanimously reversed, plaintiff's motion denied, and defendant's cross-motion to dismiss the complaint granted.