DOROTHY CAHALL, Petitioner, *v.* ROBERT B. CAHALL, Respondent.

Children's Court, Schenectady County, July 6, 1955.

*Max Herskowitz* for petitioner.

*Gerald T. Hennessy* for respondent.

Nicoll, J.  Dorothy and Robert Cahall were married on August 17, 1946, and have three children, Claudia, Deborah and Holly of the ages, five years, three years and six months respectively.  These parties are in court on the petition of Mrs. Cahall in which she seeks an order requiring respondent to furnish support for her and the children.

The proceeding is authorized by article III-A of the Children's Court Act under which the court is authorized " to compel the support of a  *  *  *  wife, if pregnant, or if the support of her minor child  *  *  *  is involved ".  (Children's Court Act, § 30, subd. 1.)

In the present case three minor children are involved, the responsibility for whose support the respondent does not deny.  He does deny legal responsibility for the support of the petitioner, contending that the marriage was dissolved by decree of the courts of the State of Nevada.  This and the question of what is " a fair and reasonable sum according to his means " are the issues involved.

The facts relative to the alleged divorce are undisputed.  The respondent, an engineer, came to work for the General Electric Company at Schenectady in March, 1948, and with the exception of about a year, July, 1948 to July, 1949, when he worked at the Burlington and Pittsfield plants of that company, has worked continuously since that time at its Schenectady plant.  He and his family lived in Schenectady during this period, the parties owning their own home as tenants by the entirety.  The respondent and his wife separated on September 24, 1954, at which time he moved to Rexford where he now resides.  He testified that he

obtained a leave of absence from the General Electric Company because of illness which leave was to begin March 11, 1955, and terminate June 13, 1955. During this leave the respondent went to Reno, Nevada, and there procured a decree purporting to dissolve his marriage to the petitioner. The decree received in evidence shows that the action was brought in the Second Judicial Court of the State of Nevada, County of Washoe. It recites among other things that " The defendant failed to answer or otherwise appear and plead within the time allowed by law, and her default for such failure was duly and regularly entered." And " That for more than six weeks immediately prior to the commencement of this action, the plaintiff was and is now an actual and bona fide resident of and actually and corporeally residing and being and domiciled in the County of Washoe, State of Nevada." It then decreed " That plaintiff be and hereby is granted an absolute divorce from the defendant upon the ground of extreme cruelty, purely mental in character." The decree was dated and filed on May 19, 1955.

The respondent further testified that he returned to Schenectady on May 22, 1955, and to his job with the General Electric Company at Schenectady on the following day. He presently works there and lives either at Rexford or Schenectady.

The respondent contends the Nevada decree is entitled to " full faith and credit " under the Federal Constitution and that this court is without jurisdiction to order support for the petitioner. To sustain an order of support including the petitioner, a finding that the relationship of husband and wife does exist is necessary. To discharge the powers vested in it by law, authority to determine the validity of a foreign decree necessarily follows. (*Matter of Morris* v. *Morris, 160* Misc. 59.)

The effect to be given to the full faith and credit clause of the Constitution is a Federal matter determinable by the United States Supreme Court whose decisions on this aspect of the matter are final. The question of whether a foreign court has jurisdiction to render a valid judgment is a question for the State court and this question must be resolved before the full faith and credit clause may enter into consideration. (*Williams* v. *North Carolina,* 325 U. S. 226.) It is an exclusive power of the courts of this State. (*Gould* v. *Gould,* 235 N. Y. 14.)

If the respondent was not validly domiciled in Nevada, then the court of that State had no jurisdiction to render a valid decree and such decree granted is not entitled to full faith and credit. (*Williams* v. *North Carolina, supra.*)

" [S]imply because the Nevada court found that it had power to award a divorce decree cannot, we have seen, foreclose reexamination by another State." (*Williams* v. *North Carolina, supra*, p. 234.)

Was the respondent a domiciliary of Nevada? True he was physically present in that State for a limited period beginning sometime after March 11, 1955, and ending prior to May 22, 1955, a period of not more than ten weeks.

" As domicile and residence are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile. * * * In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence is of no avail ". (*Matter of Newcomb,* 192 N. Y. 238, 250.)

There is nothing to indicate that respondent went to Nevada " with intent to make it a fixed and permanent home ". The evidence is all to the contrary. The limited leave of absence, the retention of his job, the stay in Nevada for little more than the minimum statutory requirement of six weeks, the immediate commencement of the divorce proceedings, the leaving of Nevada on the day of the entry of the divorce decree, his return to his residence in Schenectady on the third day after its entry and to his job on the fourth day, his continued residence and employment here since that time, all point to a lack of intention to establish a domicile in Nevada. By being there bodily it may be said that he acquired a residence there but it is equally clear that there was no intention of making it a permanent one.

Residence alone is not enough. It must be accompanied " with intent to make it a fixed and permanent home ". The element of permanency is entirely lacking.

The rule that " ' Where there has been but a brief sojourn in another State, default decrees should be set aside upon slight additional evidence that there was no intention of remaining indefinitely ' " cited by Mr. Justice SICHER in *Benedict* v. *Benedict* (203 Misc. 286, 292), is applicable in the present situation. The respondent's good faith in establishing a Nevada domicile

has been preponderantly disproved. The defendant was neither personally served with process within that State nor did she voluntarily submit herself to the jurisdiction of its courts. For the purpose of this proceeding it is now held that the Nevada court was without jurisdiction to make the constructive service default decree of divorce in question and that it is invalid. It is not intended however, that this ruling would be " *res judicata* in any declaratory judgment or matrimonial action which either party may, and should, institute in the Supreme Court of the State of New York ". (*Benedict* v. *Benedict, supra*, p. 293.)

What then is the " fair and reasonable sum " which this respondent should be required to pay? Each party submitted considerable testimony in this regard. To review it in detail is unnecessary. Respondent's present take home pay is $460 monthly. He is a mechanical engineer, not many years out of college with excellent potential earning capacity. A consideration of the needs of petitioner and her children in the light of respondent's earnings requires that the respondent pay for the support of his wife and children the sum of $175 monthly. In addition to this sum the respondent shall pay the monthly installments of $76 on the mortgage on their jointly-owned real property as they become due and submit proof of such payments regularly to the probation department. The amount herein required to be paid by the respondent is fixed on the assumption that petitioner and her children shall continue to live in the jointly-owned home, and that the petitioner shall pay the light, fuel and telephone bills, the premiums on the life insurance policies on herself and children and the monthly payments on the piano.

The monthly sum of $175 shall be paid to the probation department and by that department to the petitioner.

The petitioner has custody of the children. Respondent has shown no desire to visit them. He has never seen the child born December 31, 1954. There is nothing to indicate respondent may not see his children at any reasonable time. It is earnestly urged that he arrange to see and visit them regularly. It is of the utmost importance to them as well as himself that he do so. Should the parties however be unable to make reasonable voluntary arrangements as to times, places and other details of visitation any controversy in this regard may be brought on for hearing at the request of either party.

An order is being entered in accordance with this decision.