Charles A. Loreto, J.
This action poses the intriguing question whether a person is irrevocably yoked in marital obligations because of a decree of a foreign country, which he asserts never had jurisdiction of the subject matter and lacks the procedure for correction of the error.
In Gould v. Gould (235 N. Y. 14, 27) the court quoting from Miltonv. Guyot (159 U.S.113,130) stated: ‘ A judgment affecting the status of persons, such as a decree confirming or dissolving a marriage, is recognized as valid in every country, unless contrary to the policy of its own law. [Citations.] It was of a foreign sentence of divorce, that Lord Chancellor Nottingham, in the House of Lords, in 1688, in Cottington’s Case [2 Swanston 326], above cited, said: “It is against the law of nations not to give credit to the judgments and sentences of foreign countries, till they be reversed by the law, and according to the form, of those countries wherein they were given.” ’ ”
Accordingly, the court, by its interim decision dated March 22, 1966, withheld passing upon the wife’s motion seeking a dismissal of the husband’s complaint for a declaratory judgment based on his attack on the validity of the marriage, in order to afford him an opportunity to apply to vacate a Mexican divorce decree.
It appears that the husband seeking a divorce, in his petition in the Mexican court stated, among other things, that the parties had been married in 1963 and asked the court to incorporate in its decree a separation agreement entered into by the parties *203 shortly prior thereto. The wife appeared in the Mexican proceeding by attorney and consented to the relief sought in the petition.
Shortly after the husband obtained the Mexican divorce, he learned that the marriage ceremony allegedly solemnized in Granada, West Indies, was performed by a public official who was not a marriage officer under the laws of that jurisdiction authorized to solemnize marriage. The complaint here alleges that a marriage thus performed is null and void under the pertinent statute of Granada, West Indies.
It is asserted that the Mexican court has denied the husband’s application to vacate the divorce decree on the ground that it lacks power and authority to reopen the proceeding or to vacate its decree, since under Mexican law a final judgment of divorce is irrevocably final and conclusive. In other words, the husband states there is no procedure available in the Mexican court for reopening the proceeding to admit evidence to establish that the court lacked jurisdiction to enter the decree, which therefore should be vacated.
The parties did not litigate the question of the Mexican court’s jurisdiction in that court. The decree shows on its face that its recital of the parties’ marriage is based only on the allegation of the petition that the parties were validly married. The divorce proceeding as to that allegation was not contested.
Jurisdiction of a court to entertain a divorce action and render a binding decree rests upon jurisdiction over the marital res, as well as jurisdiction over the person of the parties. (See Senor v. Senor, 272 App. Div. 306, 310, 311, affd. 297 N. Y. 800; Geary v. Geary, 272 N. Y. 390, 399.)
“ Divorce ” in Mexico, as in common-law jurisdictions, means dissolution of an existing marriage. The first decretal provision of the Mexican decree declaring the marriage “ dissolved ”, indicates that the court itself regarded its power as embracing primarily the power to dissolve a valid and existing marriage.
The want of jurisdiction to render a judgment, whether by the courts of this State or of sister States, may always be raised and contested directly or collaterally, either from an inspection of the record itself or upon extrinsic proof. (See O’Donoghue v. Boies, 159 N. Y. 87, 98, 99, and cases cited therein; Vander v. Casperson, 16 A D 2d 881.)
That jurisdiction was assumed, but not proved, would warrant the impeachment of the decree made upon such incorrect assumption. (See Andrews v. Andrews, 188 U. S. 14; German Sav. Soc. v. Dormitzer, 192 U. S. 125.) At bar jurisdiction was *204 assumed on the recital in the petition, not then known to be erroneous, and now challenged for that reason.
If it were determined that the Mexican divorce was a nullity, it could give no life to the separation agreement. It is irrelevant that the parties intended to marry and believed that they were married, since without a valid ceremony, the legal relationship of marriage never came into existence. The husband should not be estopped to prove the Mexican judgment null and void. The doctrines of res judicata and collateral estoppel do not bar litigation of issues not determined in a prior proceeding. These doctrines do not deprive a party of an opportunity to litigate or dispute an issue, which was not in dispute and decided in a prior proceeding. (See Commissioners of State Ins. Fund v. Low, 3 N Y 2d 590, 595; Statter v. Statter, 2 N Y 2d 668; Israel v. Wood Dolson Co., 1 N Y 2d 116.)
As the husband states that he sought to correct his mistake by returning to the Mexican court and that because of the lack of any procedure in its court system for review of the issue and for appeal provided by Mexican law, he has no means of attacking its decree directly.
And in the Gould case (235 N. Y. 14, 30, supra) the court in its conclusion stated if “ the judgment [of France] was rendered for a cause not recognized as sufficient cause for absolute divorce by the law of this state, it may be that the justice presiding would be justified in holding that the decree was contrary to the policy of this state and in a refusal to give effect to the evidence sought to be established thereby. We leave those questions open.”
In Vladikavkazsky Ry. Co. v. New York Trust Co. (263 N. Y. 369, 378) the court per Httbbs, J. stated: “ Laws of foreign governments have extraterritorial jurisdiction only by comity (Huntington v. Attrill, 146 U. S. 657, 669.) * * * Where there is confliction between our public policy and comity, our own sense of justice and equity as embodied in our public policy must prevail. (Russian Socialist Federated Soviet Republic v. Cibrario, [235 N. Y. 255] supra.) ”
The propriety of reserving the issue raised for trial is supported by Martens v. Martens (284 N. Y. 363, 365-366) wherein the court wrote: “ They [judgments of courts of foreign countries] must not contravene our public policy. In order to pass upon the question as to whether a judgment of a court of a foreign country is to be recognized, there must be a disclosure of the jurisdiction of the foreign court of the subject-matter and of the parties. The acts of the parties to the foreign litigation in invoking the jurisdiction must also sometimes be *205 scrutinized. This can best be done at a trial where the court has all the facts before it and can determine under established rules the question of recognition or non-recognition of the judgment of the foreign court.”
The parties are residents and citizens of this State. It is not consonant with our public policy and justice and morals, to hold that the parties are to be held forever subject to the legal responsibilities of a valid marriage, when in fact there never was one and the decree of a foreign country because of the innocent mistake of the parties erroneously recites that there existed a valid marriage but does not permit a correction of this fundamental error. The motion to dismiss the complaint is denied.